DECISION. *Page 2 
 I. Facts and Procedure {¶ 1} Relators Richard and Lee Gilbert filed a petition asking this court to grant a writ of mandamus compelling respondents, the city of Cincinnati, the Hamilton County Board of Commissioners, and the Metropolitan Sewer District of Greater Cincinnati ("MSD") (collectively "the city"), to commence an appropriation proceeding under R.C. Chapter 163. Among other things, they contended that the city's dumping of raw sewage onto their property constituted a taking for which they were entitled to compensation. We denied the writ, holding that the Gilberts had failed to present sufficient evidence that sewage had overflowed onto their property.[1]
 {¶ 2} They appealed our decision to the Ohio Supreme Court. Subsequently, they filed a Civ. R. 60(B) motion for relief from judgment in this court on the grounds of newly discovered evidence, in which they contended that the city had failed to produce essential documents during discovery. Simultaneously, they filed a motion in the supreme court asking it to partially remand the case to this court to rule on the motion for relief from judgment. The supreme court granted that motion.[2] Subsequently, we granted the Gilberts' motion for relief from judgment on the issue of whether "the discharge of raw sewage from a sewer system onto private property constituted a taking."
 II. A Taking {¶ 3} The Ohio Supreme Court has held that "[a]ny direct encroachment upon land, which subjects it to a public use that excludes or restricts the dominion *Page 3 
and control of the owner over it, is a taking of his property, for which he is guaranteed a right of compensation by Section 19 of the Bill of Rights."[3] It has also stated numerous times, and this court has acknowledged, that the release of large quantities of raw sewage from a sewer system onto private property constitutes a taking.[4]
 {¶ 4} But the supreme court has never held that any overflow of sewage from a sewage system automatically constitutes a taking. We emphasize that evidence of one or two sewage overflows onto a landowner's property would not necessarily be sufficient to show a taking. Proof of damage alone will not entitle a landowner to compensation.[5]
 {¶ 5} In this case, the record shows that the United States Environmental Protection Agency ("EPA") sued Hamilton County, the city of Cincinnati, and others, alleging that MSD's sanitary-sewer overflows violated the Federal Water Control Act.[6] The parties, which did not include the Gilberts, ultimately entered into two consent decrees to identify and remedy sanitary-sewer overflows ("SSOs"). These consent decrees were not part of the record in the previous appeal.
 {¶ 6} The Brittany Acres Pump Station was identified in the consent decrees as an "active" SSO. The decrees required MSD to monitor and report overflows to the Ohio Environmental Protection Agency ("OEPA"). They also required MSD to post signs to identify and warn of known SSOs. MSD placed on the *Page 4 
right-of-way between Woodruff Road and the Gilberts' property a sign identifying the creek on the Gilberts' property as an SSO.
 {¶ 7} William Winters, the principal engineer for the Wastewater Treatment Division of MSD, testified that he was responsible for writing letters to OEPA when a pump station bypassed, i.e., overflowed. The record contains numerous letters from MSD to OEPA concerning bypasses at the Brittany Acres Pump Station.
 {¶ 8} Michael Pittinger, the Superintendent of Wastewater Collection for MSD, testified that his department supplies OEPA with a different monthly report about MSD's sanitary-overflow monitoring efforts. Those reports show whether MSD has observed evidence of a discharge. Using several methods for monitoring pump stations for overflows that the consent decrees allowed, MSD, in conjunction with a private contractor, documented those overflows. MSD marked "AH" on the report if "evidence of discharge exists, however exact date unknown" or "POS" if "a discharge was observed during site inspection."
 {¶ 9} The Gilberts note that, on at least 79 days from 1998 to the present, either the Brittany Acres Pump Station had evidence of a discharge or a discharge was actually observed. The city argues that the reports only show actual discharges on eight days. The record also shows that the methods for monitoring were not perfect and could not always pinpoint the exact time of discharge, but that the evidence did demonstrate that discharges had occurred.
 {¶ 10} Several witnesses testified that when the Brittany Acres Pump Station overflowed, the raw sewage flowed into the creek on the Gilberts' property, which is why the consent decrees required the placement of the sign labeling the Gilberts' property an SSO. Because of the station's lack of capacity and the frequent *Page 5 
overflows, MSD was in the process of upgrading the station. Those upgrades were nearly complete.
 {¶ 11} Thus, the Gilberts' new evidence shows unequivocally that the Brittany Acres Pump Station has overflowed a substantial number of times since 1998 when they had bought their property. Consequently, under the circumstances of this case, we hold that a taking has occurred.[7]
 {¶ 12} The Gilberts state that the Brittany Acres station was inadequate to handle the flow of water that it received and that it was designed to overflow on their property. We emphasize that the taking in this case has nothing to do with the design of the station. The taking results from the actual overflows of sewage onto the Gilberts' property.
 III. Deprivation of Use and Enjoyment of Property {¶ 13} The city argues that the Gilberts have not shown a taking because they have not demonstrated that they were denied all use of their property during the period for which the taking is alleged. We disagree. The cases the city cites for this proposition generally involve regulatory takings, such as in cases involving zoning.[8]
 {¶ 14} The supreme court has stated that "a municipality in creating a public improvement, may be liable for causing * * * sewage * * * or surface water * * * to be cast upon the land of another, if in so doing the owner is deprived of any of the use and enjoyment of his property."[9] It has since held that in cases of physical invasion of the land or the destruction of a fundamental attribute of ownership like the right of access, the landowner did not have to prove the deprivation of all economically *Page 6 
viable uses of the property.[10] In other cases, which generally involved a claimed regulatory taking, the landowner needed to prove that the taking deprived him of all economically viable uses of the property.[11] Since this case involved an actual physical invasion of the land, the Gilberts do not have to prove they were denied all use of their property.
 IV. No Adequate Remedy at Law {¶ 15} Finally, the city argues that the Gilberts are not entitled to a writ of mandamus because they have an adequate remedy at law.[12] We disagree. Case law is absolutely clear that a property owner's remedy for an alleged taking of property by a public authority is a mandamus action to compel the authority to institute appropriation proceedings.[13] No other type of action will provide relief that is sufficiently complete, beneficial, and speedy so as to preclude relief in mandamus.[14]
 V. Motion to Supplement the Record {¶ 16} Finally, the city has filed a motion to supplement the record to present evidence showing that the upgrade to the Brittany Acres Pump Station is substantially complete and that it is online and in use. We deny the city's motion. First, the Gilberts should have an opportunity to present their own evidence on the issue. Second, we believe that the issue of whether the upgrade has resolved the *Page 7 
problem is more relevant to the issue of damages in the appropriation proceeding than to the issue of whether a taking has occurred.[15]
 VI. Summary {¶ 17} In sum, we conclude that the Gilberts have shown (1) that they possess a clear legal right to appropriation, (2) that the city has a clear legal duty to appropriate the property, and (3) that they have no adequate remedy at law. Thus, they have shown that they are entitled to a writ of mandamus.[16] We, therefore, grant the writ to compel the city to begin appropriation proceedings under R.C. Chapter 163.
Writ granted.
HENDON, P.J., and CUNNINGHAM, J., concur.
[1] State ex rel. Gilbert v. Cincinnati, 174 Ohio App.3d 89,2007-Ohio-6332, 880 N.E.2d 971, ¶ 28-37 (Gilbert I).
[2] State ex rel. Gilbert v. Cincinnati, 118 Ohio St.3d 1445,2008-Ohio-2831, 888 N.E.2d 421 (Gilbert II).
[3] Norwood v. Sheen (1933), 126 Ohio St. 482, 186 N.E. 102, paragraph one of the syllabus.
[4] Trautwein v. Sorgenfrei (1979), 58 Ohio St.2d 493, 504,391 N.E.2d 326; Masley v. Lorain (1976), 48 Ohio St.2d 334, 336, 358 N.E.2d 596;Norwood, supra, at paragraph two of the syllabus; Gilbert I, supra, at ¶ 28; State ex rel. Livingston Ct. Apts. v. Columbus (1998),130 Ohio App.3d 730, 735-736, 721 N.E.2d 135; Bd. of Cty. Commrs. v. Florian
(Jan. 16, 1985), 1st Dist. Nos. C-830880 and C-830881;Florian v. Paul (June 8, 1977), 1st Dist. No. C-76322.
[5] State ex rel. Fejes v. Akron (1966), 5 Ohio St.2d 47, 50,213 N.E.2d 353; State ex rel. East, Inc. v. Oregon (Mar. 16, 1984), 6th Dist. No. L-83-378.
[6] Section 1311, Title 33, U.S. Code.
[7] See Norwood, supra, at 488-489.
[8] See Shopco Group v. Springdale (1990), 66 Ohio App.3d 702,705-708, 586 N.E.2d 145.
[9] Masley, supra, at 335. (Citations omitted and emphasis added.)
[10] State ex rel. Elsass v. Shelby Cty. Bd. Of Commrs.,92 Ohio St.3d 529, 534, 2001-Ohio-1276, 751 N.E.2d 1032; BSW Dev. Group v.Dayton, 83 Ohio St.3d 338, 342, 1998-Ohio-287, 699 N.E.2d 1271;Gabel v. Miami E. School Bd., 169 Ohio App.3d 609, 2006-Ohio-5963,864 N.E.2d 102, ¶ 50.
[11] Elsass, supra, at 534; Gabel, supra, at ¶ 50.
[12] See State ex rel. Natl. Broadcasting Co., Inc. v. Cleveland
(1988), 38 Ohio St.3d 79, 80, 526 N.E.2d 786; Gilbert I, supra, at ¶ 43.
[13] State ex rel. Gilmour Realty, Inc. v. Mayfield Hts.,119 Ohio St.3d 11, 2008-Ohio-3181, 891 N.E.2d 320, ¶ 13; Bibbs v. CinergyCorp., 1st Dist. No. C-010390, 2002-Ohio-1851;Livingston Ct. Apts., supra, at 739-740; Florian v. Paul, supra.
[14] See Gilmour Realty, supra, at ¶ 14.
[15] See Norwood, supra, at 491-495.
[16] Gilbert I, supra, at ¶ 18; Cincinnati Entertainment Assoc., Ltd.,v. Hamilton Cty. Bd. Of Commrs. (2001), 141 Ohio St.3d 803, 811,753 N.E.2d 884. *Page 1