THE STATE EX REL. GILBERT ET AL., APPELLANTS AND CROSS-APPELLEES, *v.*
CITY OF CINCINNATI ET AL., APPELLEES AND CROSS-APPELLANTS.

[Cite as *State ex rel. Gilbert v. Cincinnati*,

125 Ohio St.3d 385, 2010-Ohio-1473.]

*Appeal and cross-appeal from court of appeals' judgment granting writ of
mandamus to compel city to commence an appropriation proceeding for
physical taking (sanitary-sewer overflow onto property) and denying writ
of mandamus to compel city to commence an appropriation proceeding for
alleged regulatory taking (city's failure to upgrade sewage system to
allow property owner to connect to sewer) — Court of appeals' judgment
affirmed.*

(Nos. 2008-0029 and 2009-0753 — Submitted March 31, 2010 — Decided

April 8, 2010.)

APPEAL and CROSS-APPEAL from the Court of Appeals for Hamilton County,

No. C-070166, 174 Ohio App.3d 89, 2007-Ohio-6332, and 2009-Ohio-1078.

_____

**Per Curiam.**

{¶ 1}  This is an appeal and cross-appeal from a judgment granting a writ
of mandamus to compel appellees and cross-appellants, city of Cincinnati,
Hamilton County Board of Commissioners, and the Metropolitan Sewer District
of Greater Cincinnati (collectively, "the city"), to institute an appropriation
proceeding for the physical taking of the property of appellants and cross-
appellees, Richard C. Gilbert and Lee A. Gilbert, and denying a writ of
mandamus to compel the city to commence an appropriation proceeding for the
alleged regulatory taking of the Gilberts' property.[1]  Because the court of appeals

_____

1. We consolidated these cases and designated the Gilberts' appeal as the appeal and the city's
appeal as the cross-appeal.  *State ex rel. Gilbert v. Cincinnati*, 122 Ohio St.3d 1418, 2009-Ohio-
2982, 908 N.E.2d 428.

properly granted the writ on the Gilberts' physical-taking claim and correctly denied the writ on their regulatory-taking claim, we affirm.

**Facts**

{¶ 2}   In 1998, Richard C. Gilbert, through his investment company, purchased a house and over 5.5 acres of property in Cincinnati, Ohio.  The property includes a creek that runs along its length.  Richard Gilbert refinanced the property in 1999, and the property was transferred to him and his wife, Lee A. Gilbert.  The Gilberts have lived in the home on the property since then.

{¶ 3}   When the property was purchased, the Gilberts were both real-estate agents, and they intended to develop the property by dividing it into 10 or 11 lots, in accordance with applicable zoning regulations.  Although a sewage line is adjacent to the property and a nearby pump station serves it, the property is not connected to the sewer system, and therefore the Gilberts' property uses a septic system.

{¶ 4}   Although a means to dispose of the waste from the proposed development was necessary, Richard Gilbert purchased the property without knowing that there would be limitations on his ability to use the sewer system. He had not contacted the sewer district before the purchase and had no expectation that the nearby pump station would be upgraded to accommodate the increased waste from the proposed development.  In fact, in 1995, the city knew that the existing pump station was incapable of accepting any additional sewage flow unless it was upgraded.

{¶ 5}   After he bought the property, Richard Gilbert was given a copy of a 1997 letter to other property owners in the neighborhood who had inquired about the city's providing sewer service to their property.  In that letter, the city explained that it could not provide sewer service, because the existing system was at full capacity.  The city noted that it was planning to upgrade the pump station in late 1998, when additional sewer connections would be permitted.

**{¶ 6}** The Gilberts subsequently sought approval for the development of additional single-family residences on the property, but the requests were denied because the city had not yet upgraded the pump station to handle the additional sewage generated by the proposed development.

**{¶ 7}** After the Gilberts purchased the property, the pump station repeatedly overflowed, spilling sewage into the creek on their property. Pursuant to a consent decree entered into between the federal and state environmental protection agencies and the city after the city was found to be in violation of the Federal Water Pollution Control Act, the city erected a sign near the creek on the Gilberts' property. The sign stated that the area was a sanitary-sewer-overflow area, that water in the area "may contain sanitary sewage," and that contact with sewage poses a "potential health risk." The sewage has impaired the Gilberts' ability to use and enjoy their property and has restricted their control of it.

**{¶ 8}** In 2007, the Gilberts filed an action in the Court of Appeals for Hamilton County for a writ of mandamus to compel the city to commence an appropriation proceeding. In their mandamus petition, the Gilberts alleged two separate takings claims: (1) a regulatory taking based on the city's failure to improve the sewer-system pump station, which frustrated the Gilberts' reasonable investment-backed expectations, and (2) a physical taking based on the city's failure to upgrade the pump station, which caused raw sewage to directly encroach upon the Gilberts' property by flowing into the creek.

**{¶ 9}** In November 2007, the court of appeals denied the writ. *State ex rel. Gilbert v. Cincinnati*, 174 Ohio App.3d 89, 2007-Ohio-6332, 880 N.E.2d 971. The court of appeals concluded that (1) the Gilberts' inability to develop their property to the maximum allowed under its zoning classification had not resulted in a regulatory taking and (2) the Gilberts had failed to present sufficient evidence that sewage from the pump station had overflowed onto their property so as to constitute a physical taking. Id. at ¶ 27-28.

{¶ 10} The Gilberts appealed the court of appeals' denial of the writ to this court in case No. 2008-0029. After the court of appeals entered its judgment, the Gilberts received additional sanitary-sewer-overflow reports from the Ohio Environmental Protection Agency that they had previously requested. Based on this new evidence, the Gilberts filed a Civ.R. 60(B) motion for relief from judgment in the court of appeals and motions in this court to stay the appeal and to remand part of the appeal to the court of appeals to rule on the Civ.R. 60(B) motion. We granted the motions for a stay and a partial remand. *State ex rel. Gilbert v. Cincinnati*, 118 Ohio St.3d 1445, 2008-Ohio-2831, 888 N.E.2d 421.

{¶ 11} On remand, the court of appeals granted the Gilberts' motion for relief from judgment on their physical-taking claim by ordering the parties to file evidence and briefs on the issue whether "the discharge of raw sewage from a sewer system onto private property constituted a taking." The additional evidence included testimony that the planned pump-station upgrade, which would eliminate overflows and allow additional sewer-system connections, was close to completion. Following the completion of briefing, the city filed a motion to supplement the record with evidence that the pump-station upgrade had been completed, the sanitary-sewer-overflow sign had been removed, and the upgrade provided capacity for the Gilberts' planned development.

{¶ 12} In 2009, the court of appeals granted a writ of mandamus to compel the city to commence an appropriation proceeding on the Gilberts' physical-taking claim. *State ex rel. Gilbert v. Cincinnati*, Hamilton App. No. C-070166, 2009-Ohio-1078. The court of appeals also denied the city's motion to supplement the record and denied the city's subsequent request for findings of fact and conclusions of law. The city appealed the judgment in case No. 2009-0753.

{¶ 13} This cause is now before the court upon the Gilberts' appeal from the judgment of the court of appeals denying the writ of mandamus for their

regulatory-taking claim and the city's cross-appeal from the judgment of the court of appeals granting the writ of mandamus for the Gilberts' physical-taking claim.

**Legal Analysis**

*Mandamus to Compel Appropriation*

{¶ 14} "The United States and Ohio Constitutions guarantee that private property shall not be taken for public use without just compensation." *State ex rel. Shemo v. Mayfield Hts.* (2002), 95 Ohio St.3d 59, 63, 765 N.E.2d 345, judgment modified in part on other grounds, 96 Ohio St.3d 379, 2002-Ohio-4905, 775 N.E.2d 493; Fifth and Fourteenth Amendments to the United States Constitution; Section 19, Article I, Ohio Constitution. "Mandamus is the appropriate action to compel public authorities to institute appropriation proceedings where an involuntary taking of private property is alleged." *Shemo* at 63.

{¶ 15} To be entitled to the requested writ of mandamus, the Gilberts must establish a clear legal right to compel the city to commence appropriation, a corresponding legal duty on the part of the city to institute that action, and the lack of an adequate remedy for the Gilberts in the ordinary course of law. See *State ex rel. Shelly Materials, Inc. v. Clark Cty. Bd. of Commrs.*, 115 Ohio St.3d 337, 2007-Ohio-5022, 875 N.E.2d 59, ¶ 15. The Gilberts claim entitlement to appropriation proceedings for two separate takings of their property – a regulatory taking and a physical taking.

*Appeal: Regulatory Taking*

{¶ 16} In their appeal, the Gilberts assert that the court of appeals erred in denying a writ of mandamus to compel the city to commence an appropriation action on their regulatory-taking claim. The Gilberts claim that the city's failure to timely upgrade the pump station and to permit sewage connections or alternatives to dispose of sewage interfered with their reasonable investment-backed expectations for the property. The court of appeals denied the Gilberts'

takings claim because they were not able to establish that the city's regulatory actions "denied all economically viable use of the land." *Gilbert*, 174 Ohio App.3d 89, 2007-Ohio-6332, 880 N.E.2d 971, ¶ 25.

{¶ 17} The court of appeals erred in so holding because the Gilberts' failure to establish that the city's regulatory actions denied them all economically viable use of their property does not render their mandamus claim meritless. See *State ex rel. Gilmour Realty, Inc. v. Mayfield Hts.*, 119 Ohio St.3d 11, 2008-Ohio-3181, 891 N.E.2d 320, ¶ 21. The Gilberts could still establish a partial regulatory taking under the standard specified by the Supreme Court of the United States in *Penn Cent. Transp. Co. v. New York City* (1978), 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631. Id.; *State ex rel. Duncan v. Middlefield*, 120 Ohio St.3d 313, 2008-Ohio-6200, 898 N.E.2d 952, ¶ 17-18. "*Penn Cent.* recognizes an ad hoc, factual inquiry that requires the examination of the following three factors to determine whether a regulatory taking occurred in cases in which there is no physical invasion and the regulation deprives the property of less than 100 percent of its economically viable use: (1) the economic impact of the regulation on the claimant, (2) the extent to which the regulation has interfered with distinct investment-backed expectations, and (3) the character of the governmental action." *Shelly Materials*, 115 Ohio St.3d 337, 2007-Ohio-5022, 875 N.E.2d 59, ¶ 19.

{¶ 18} Although the court of appeals erred in this regard, "[w]e will not reverse a correct judgment simply because some or all of a lower court's reasons are erroneous." *State ex rel. Swain v. Bartleson*, 123 Ohio St.3d 125, 2009-Ohio-4690, 914 N.E.2d 403, ¶ 1.

{¶ 19} "In order to make a successful claim under the Takings Clause, appellants must establish first that they possess a constitutionally protected property interest." *Neifert v. Dept. of the Environment* (2006), 395 Md. 486, 522, 910 A.2d 1100, citing *Ruckelshaus v. Monsanto Co.* (1984), 467 U.S. 986, 1000-

1001, 104 S.Ct. 2862, 81 L.Ed.2d 815; *Beasley v. Flathead Cty.* (2009), 350 Mont. 177, 2009 MT 121, 206 P.3d 915, ¶ 13 ("takings claims require a plaintiff first to demonstrate that it possesses a constitutionally protected property interest").

{¶ 20} To be sure, property, for purposes of the Takings Clause, "encompasses more than the physical object owned." *McNamara v. Rittman*, 107 Ohio St.3d 243, 2005-Ohio-6433, 838 N.E.2d 640, ¶ 24-25. Courts have nevertheless recognized that access to government-provided sewer service is not a constitutionally protected interest subject to the Takings Clause. *Neifert*, 395 Md. at 522, 910 A.2d 1100, quoting *Penn Cent.*, 438 U.S. at 124-125, 98 S.Ct. 2646, 57 L.Ed.2d 631 ("Appellants have not demonstrated that the denial of sewer service has interfered with interests 'that were sufficiently bound up with the reasonable expectations of the claimant to constitute "property" for Fifth Amendment purposes' "); *Front Royal & Warren Cty. Indus. Park Corp. v. Front Royal* (C.A.4, 1998), 135 F.3d 275, 286-287 (holding that the failure to provide sewer service is not a taking, because there is no constitutionally protected property right to government-provided sewer service).

{¶ 21} Ohio is no different. We have long recognized that a "municipality is not obliged to construct * * * sewers." *Doud v. Cincinnati* (1949), 152 Ohio St. 132, 137, 39 O.O. 441, 87 N.E.2d 243; see also *Holbrook v. Brandenburg*, Clark App. No. 2007 CA 106, 2009-Ohio-2320, ¶ 17. Because the appellate court decision relied upon by the Gilberts fails to analyze whether there is a constitutionally protected right to government-provided sewer access, we find it unpersuasive. See *November Properties, Inc. v. Mayfield Hts.* (Dec. 6, 1979), Cuyahoga App. No. 39626, 1979 WL 210535.

{¶ 22} Moreover, the Gilberts' investment-backed expectations for their property were not reasonable under the circumstances. Richard Gilbert had been a real-estate agent for over 15 years when he bought the property in 1998, and Lee

Gilbert had been a real-estate agent since 1989. When Richard Gilbert purchased the property in 1998 through his investment company, he did not expect that the sewer district would upgrade the pump station. He bought the property without contacting the sewer district to see if he could tap into the sewer system and without investigating or knowing whether there would be limitations on his ability to use the sewer system. The city had no clear legal duty to provide these sewer taps sooner than it did when the pump station was already operating at capacity and an upgrade would have required the expenditure of additional government resources.

**{¶ 23}** Therefore, although its rationale for denying the writ was erroneous, the court of appeals correctly held that the Gilberts' regulatory-taking claim lacked merit.

*Cross-Appeal:  Physical Taking*

**{¶ 24}** In its cross-appeal, the city argues that the court of appeals erred in granting the writ of mandamus on the Gilberts' physical-taking claim. "The rights related to property, i.e., to acquire, use, enjoy, and dispose of property, * * * are among the most revered in our law and traditions." *Norwood v. Horney*, 110 Ohio St.3d 353, 2006-Ohio-3799, 853 N.E.2d 1115, ¶ 34. "There can be no doubt that the bundle of venerable rights associated with property is strongly protected in the Ohio Constitution and must be trod upon lightly, no matter how great the weight of other forces."  Id. at ¶ 38. "[P]hysical takings require compensation because of the unique burden they impose:  A permanent physical invasion, however minimal the economic cost it entails, eviscerates the owner's right to exclude others from entering and using her property–perhaps the most fundamental of all property interests." *Lingle v. Chevron U.S.A., Inc.* (2005), 544 U.S. 528, 539, 125 S.Ct. 2074, 161 L.Ed.2d 876.

**{¶ 25}** The city contends that the court of appeals committed error when it "established a new legal precedent that any overflow of sewage onto private

property is a *per se* taking requiring appropriation of the subject property" and "regardless of whether or not the overflow has given rise to damages."

{¶ 26} The city is incorrect. The court of appeals did not so hold. In fact, the court expressly held to the contrary:

{¶ 27} "But the supreme court has never held that any overflow of sewage from a sewage system automatically constitutes a taking. We emphasize that evidence of one or two sewage overflows onto a landowner's property would not necessarily be sufficient to show a taking. Proof of damage alone will not entitle a landowner to compensation." *Gilbert*, Hamilton App. No. C-070166, 2009-Ohio-1078, at ¶ 4.

{¶ 28} The court of appeals then held that the Gilberts' evidence established "unequivocally" that the pump station had "overflowed a substantial number of times since 1998 when they * * * bought their property" and that this constituted a physical invasion of their property, so they did not need to prove that they were denied all use of their property. Id. at ¶ 11, 14.

{¶ 29} Our precedent supports the court of appeals' holding that there was a physical taking of the Gilberts' property. "Any direct encroachment upon land, which subjects it to a public use that excludes or restricts the dominion and control of the owner over it, is a taking of his property, for which he is guaranteed a right of compensation by section 19 of the Bill of Rights." *Norwood v. Sheen* (1933), 126 Ohio St. 482, 186 N.E. 102, paragraph one of the syllabus. "[U]nder this principle, a municipality in creating a public improvement, may be liable for causing sewage * * * to be cast upon the land of another, if in so doing the owner is deprived of any of the use and enjoyment of his property." *Masley v. Lorain* (1976), 48 Ohio St.2d 334, 336, 2 O.O.3d 463, 358 N.E.2d 596; *Mansfield v. Balliett* (1902), 65 Ohio St. 451, 471, 63 N.E. 86 (in case in which city emptied sewage into natural watercourse, the court held that "any physical interference by another with the owner's use and enjoyment of his property is a taking, to that

extent" and that "the principle of the constitution is as applicable where the owner is partially deprived of the uses of his land as where he is wholly deprived of it").

{¶ 30} There was sufficient evidence here to establish that the city directly encroached upon the Gilberts' property by depositing sewage in the creek that flows through their property. The pump station had overflowed on at least 79 days between 1998, when Richard Gilbert purchased the property, and 2008. The sewer district's own employees testified that when the pump station overflowed, the sewage went into the creek.

{¶ 31} There was also evidence that the frequent sewage overflows at least in part deprived the Gilberts of the use and enjoyment of their property. The sewer district's own sign declared that the area was a "sanitary sewer overflow" area and that "[c]ontact with sewage poses a potential health risk." A sewer-district engineer agreed that "[a]nytime you come in contact with sewage there is the potential for disease."

{¶ 32} In effect, the Gilberts established a taking because the city physically displaced them from exercising dominion and control of the creek and surrounding area on their property. See *McNamara*, 107 Ohio St.3d 243, 2005-Ohio-6433, 838 N.E.2d 640, at ¶ 28 ("Rights appurtenant to property are protected from governmental invasion, and water rights are appurtenant to title in real property"). Moreover, because the sewage overflows were directed at the Gilberts' property, a taking occurred even in the absence of physical displacement. See *McKee v. Akron* (1964), 176 Ohio St. 282, 285, 27 O.O.2d 197, 199 N.E.2d 592, overruled on other grounds by *Haverlack v. Portage Homes, Inc.* (1982), 2 Ohio St.3d 26, 2 OBR 572, 442 N.E.2d 749 ("A taking may also be found where it is clear that the injury sustained by a person differs substantially in kind from that sustained by others in the neighborhood, even though there has been no physical displacement. Thus a person might recover by showing that the damage was directed at his particular property").

**{¶ 33}** Even if the taking were temporary as opposed to permanent, as the city asserts, that conclusion would not preclude a finding that there was, in fact, a taking. *Norwood*, 126 Ohio St. 482, 186 N.E. 102, at paragraph one of the syllabus. Moreover, even when taking into consideration the supplemental evidence proffered by the city in the proceedings below, the evidence is conflicting whether the pump-station upgrade would necessarily fix the problems caused by the sewage having been dumped into the Gilberts' creek. The Gilberts testified that unless the city also cleaned the creek, the contamination caused by the decade-long overflow of sewage into the creek would not be remedied by the upgrade.

**{¶ 34}** Therefore, the court of appeals correctly held that the Gilberts established a physical taking of their property.

**{¶ 35}** In its cross-appeal, the city also claims that the court of appeals abused its discretion by denying its motion to supplement the record with evidence that the upgrade of the pump station is complete and that any physical invasion has thus been abated because this evidence bears upon whether the taking is permanent or temporary. "The admission or exclusion of relevant evidence rests within the sound discretion of the trial court." See generally *State v. Haines*, 112 Ohio St.3d 393, 2006-Ohio-6711, 860 N.E.2d 91, ¶ 50.

**{¶ 36}** The court of appeals did not abuse its discretion in denying the city's motion based on its belief that "the issue of whether the upgrade has resolved the problem is more relevant to the issue of damages in the appropriation proceeding than to the issue of whether a taking has occurred." *Gilbert*, Hamilton App. No. C-070166, 2009-Ohio-1078, ¶ 16. Although this evidence would have been helpful, "[w]hether a taking is characterized as temporary or permanent is of little significance in determining whether a taking has occurred and is not conclusive on the issue of when a suit must be brought on a taking claim, but such characterization has a bearing on the measure of damages." See Annotation,

Elements and Measure of Compensation in Eminent Domain Proceeding for Temporary Taking of Property (2009), 49 A.L.R.6th 205, Section 2. And insofar as the city further contends that an appropriation proceeding is not the proper remedy when there is a temporary taking, we have expressly held otherwise. See, e.g., *Shemo*, 95 Ohio St.3d at 70, 765 N.E.2d 345 (writ of mandamus granted to compel respondents to commence appropriation proceedings to determine the amount of the city's temporary taking of relators' property); see also *Duncan*, 120 Ohio St.3d 313, 2008-Ohio-6200, 898 N.E.2d 952, ¶ 16 (in case in which relator alleged a temporary regulatory taking, court held that mandamus is the appropriate action to commence an appropriation proceeding to determine the amount of compensation to be awarded if taking is established).

{¶ 37} Finally, notwithstanding the city's claim, the court of appeals did not err by denying the city's request for findings of fact and conclusions of law. " '[A] trial court has a mandatory duty under Civ.R. 52 to issue findings of fact and conclusions of law upon request timely made.' " *State ex rel. Papp v. James* (1994), 69 Ohio St.3d 373, 377, 632 N.E.2d 889, quoting *In re Adoption of Gibson* (1986), 23 Ohio St.3d 170, 173, 23 OBR 336, 492 N.E.2d 146. The purpose of this provision is "to aid the appellate court in reviewing the record and determining the validity of the basis of the trial court's judgment." *Werden v. Crawford* (1982), 70 Ohio St.2d 122, 124, 24 O.O.3d 196, 435 N.E.2d 424.

{¶ 38} "If the court's ruling or opinion, together with other parts of the trial court's record, provides an adequate basis upon which an appellate court can decide the legal issues presented, there is * * * substantial compliance with Civ.R. 52." *Abney v. W. Res. Mut. Cas. Co.* (1991), 76 Ohio App.3d 424, 431, 602 N.E.2d 348. "The test for determining whether a trial court's opinion satisfies the requirements of Civ.R. 52 is whether the contents of the opinion, when considered together with other parts of the record, form an adequate basis upon which to

decide the narrow legal issues presented." *Brandon/Wiant Co. v. Teamor* (1999), 135 Ohio App.3d 417, 423, 734 N.E.2d 425.

{¶ 39} After applying that test here, we conclude that the contents of the court of appeals' judgment and opinion granting the writ are sufficiently detailed for this court to decide the pertinent legal issues raised by the appeal and cross-appeal.

**Conclusion**

{¶ 40} The court of appeals correctly granted the writ of mandamus to compel the city to commence an appropriation proceeding to determine the compensation due the Gilberts for the city's physical taking of their property. The court of appeals also properly denied the writ of mandamus on the Gilberts' regulatory-taking claim. Therefore, we affirm the judgment of the court of appeals.

Judgment affirmed.

MOYER, C.J.,[2] and LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

PFEIFER, J., concurs in judgment only.

_____

Manley Burke, Matthew W. Fellerhoff, and Daniel J. McCarthy, for appellants and cross-appellees.

John P. Curp, Cincinnati City Solicitor, and Paula Boggs Muething and Terrance A. Nestor, Assistant City Solicitors, for appellees and cross-appellants.

_____

_____

2. The late Chief Justice Thomas J. Moyer participated in the deliberations in, and the final resolution of, this case prior to his death.