[Cite as *State ex rel. OC Lorain Fulton, L.P. v. Cleveland*, 2019-Ohio-1531.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE EX REL. OC LORAIN
FULTON, L.P.,                                    :

       Plaintiff-Appellant,            :

                                    No. 107481

       v.                                          :

CITY OF CLEVELAND,                    :

       Defendant-Appellee.            :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** April 25, 2019

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-16-871515

---

### *Appearances:*

Mansour Gavin L.P.A., Bruce G. Rinker, John W. Monroe,
and Kathryn E. Weber, *for appellant.*

Roetzel & Andress, L.P.A., Stephen W. Funk and Leighann
K. Fink, *for appellee.*

PATRICIA ANN BLACKMON, P.J.:

{¶ 1}  Appellant OC Lorain Fulton, L.P. ("Lorain Fulton") appeals the trial

court's denial of a writ of mandamus.  Lorain Fulton's mandamus alleged that

appellee city of Cleveland had, by its zoning regulations, effectuated a "taking" of Lorain Fulton's real estate. Lorain Fulton assigns two errors for our review:

> I. The trial court misapplied fundamental and requisite zoning standards material to the adjudication of the merits of [Lorain Fulton's] regulatory takings claim and thereby committed reversible error.
>
> II. The trial court misconstrued the three criteria articulated by the United States Supreme Court in *Penn Central Transportation Co. v. New York*, 438 U.S. 104, [98 S.Ct. 2646, 57 L.Ed.2d 631] (1978), as the framework for evaluating the merits of a regulatory takings claim and thereby committed reversible error.

{¶ 2} Having reviewed the record and the pertinent law, we affirm the decision of the trial court.

{¶ 3} In 2012, Lorain Fulton purchased a parcel of property on 3701 Lorain Avenue at the intersection of Fulton Road and West 38th Street for $600,000. It is undisputed that the parcel is located in a Local Retail Business District. It is also undisputed that since 2003, the area has been part of a Pedestrian Retail Overlay ("PRO") district, the purpose of which is to "maintain the economic viability of older neighborhood shopping districts by preserving the pedestrian-oriented character of those districts and to protect public safety[.]" In 2013, Lorain Fulton leased the property to McDonald's Restaurants under a "triple net lease" that placed key obligations such as maintenance and taxes on the tenant rather than the landlord.

A McDonald's Restaurant with 86-foot frontage and drive-through was planned for the parcel.[1]

{¶ 4} The record demonstrates that the proposed plan satisfied 95 out of 96 zoning conditions and did not require a variance, but the planned 86-foot frontage exceeded the 40-foot limitation of the PRO district. As such, it required conditional-use approval from the planning commission. In October 2012, Lorain Fulton submitted an application for conditional-use approval. The city required Lorain Fulton to obtain a traffic impact study. Ultimately, the study determined that the proposed development would not generate a negative traffic impact. The city's traffic engineer and an independent traffic engineer also agreed with this assessment. Nevertheless, the planning commission denied the conditional-use approval for the 86-foot frontage. The Board of Zoning Appeals ("BZA") affirmed.

{¶ 5} On appeal to the court of common pleas in Cuyahoga C.P. No. CV-14-822128, the court reversed. The trial court concluded that the PRO's 40-foot limitation on building frontage is "incapable of rational application and bears no rational basis to the stated purpose of the PRO," and was "used as a pretext" for denying expressly permitted uses. The city appealed the common pleas ruling to this court. In November 2016, while the appeal was pending, Lorain Fulton sold the property to MetroHealth for $1,175,000. This court subsequently dismissed the appeal, determining that the sale to MetroHealth had rendered the controversy

---

[1]A zoning amendment was later added to prohibit drive-thru businesses, but this new amendment was not enforced with regard to this parcel.

moot.  *See OC Lorain Fulton v. Bd. of Zoning Appeals*, 8th Dist. Cuyahoga No. 104561, 2017-Ohio-971 ("*Lorain Fulton I*").

{¶ 6} After that ruling, Lorain Fulton filed the instant mandamus action against the city to compel it to begin appropriation proceedings, alleging that the city's regulation had caused a partial "taking" of its property.[2]  The parties filed extensive briefs and submitted factual stipulations and testimony.  Russell Lamb ("Lamb") of Lorain Fulton testified that after Cleveland appealed the reversal of the BZA decision, McDonald's terminated its lease with Lorain Fulton.  Lorain Fulton later sold the property to MetroHealth for $1,175,000, but according to Lamb, it anticipated selling the parcel for $1,500,000 upon obtaining the requested conditional-use approval.  Therefore, Lamb maintained that Lorain Fulton suffered a deficit of $325,000 due to this lowered sale price.  He also asserted that Lorain Fulton incurred litigation costs of $636,000 from the denial of the conditional use approval.

{¶ 7} Robert Brown ("Brown"), formerly of the Cleveland planning commission, testified that the property was located in the PRO, so the proposed use required planning commission consideration of traffic and other issues.  Despite the city's denial of the conditional-use approval, Brown maintained that "every other use would still be available for the property."  Brown admitted that restrictions in the PRO were not enforced on a similarly situated parcel owned by Hansa Haus.  The

---

[2]Lorain Fulton also asserted various constitutional challenges and sought injunctive relief, but only the partial taking claim remained pending at the time of trial.

city also maintained that there had been no partial regulatory taking because the ultimate sale to MetroHealth for $1,175,000 resulted in a 78% recovery of the anticipated $1,500,000 return on investment and was a considerable profit over the $600,000 purchase price.

{¶ 8} On July 3, 2018, the trial court determined that no taking had occurred, and it declined to issue a writ of mandamus. Applying the standard articulated in *Penn Cent.*, 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978), the court stated, in relevant part:

> The City's denial of use variance to [Lorain Fulton] only foreclosed [Lorain Fulton] from one proposed use of its property. [Lorain Fulton] had alternative uses for the property, and did sell the property at profit, despite the actions taken by the City. While the City undeniably cost [Lorain Fulton] a portion of its expected profit, the denial of zoning approval for one proposed use does not result in a *Penn Central* taking where there are other productive uses available under the applicable zoning regulations; that is, something more than loss of market value or loss of the comfortable enjoyment of the property is needed to constitute taking. *BSW Dev. Group v. City of Dayton*, 83 Ohio St.3d 338, 344, 1998-Ohio-287, 699 N.E.2d 1271.

### Lack of Evidence Supporting Denial of Conditional-Use Approval

{¶ 9} In its first assigned error, Lorain Fulton argues that the trial court failed to appreciate that the planning commission simply denied the approval without evidence, and that the court mistakenly believed that Lorain Fulton's planned use required a variance.

{¶ 10} After thoroughly reviewing the trial court opinion, we note that although the trial court does reference the term "variance," the court fully appreciated that this matter concerned the "conditional-use approval" for the 86-

foot frontage. The court also clearly understood that the planning commission's decision was not supported by the evidence because the court recognized that the city treated Lorain Fulton less favorably than Hansa Haus, a similarly situated business. Additionally, the court held that the city's "interference with [Lorain Fulton's] business contract can be viewed as draconian or even abusive[.]" However, as explained below in the second assigned error, the court applied the *Penn Cent.* analysis to this case, as requested by the parties and as required under law. Accordingly, we cannot conclude that the trial court applied incorrect law to this matter or that it erroneously evaluated the evidence.

{¶ 11} The first assigned error is without merit.

### *Penn Central* Partial Taking Analysis

{¶ 12} In its second assigned error, Lorain Fulton argues that the trial court erroneously applied the *Penn Cent.* analysis to this matter.

{¶ 13} The applicable standard of review in takings cases has been explained as follows:

> Whether a compensable taking has occurred is a question of law based on factual underpinnings. *Wyatt v. United States*, 271 F.3d 1090, 1096 (Fed. Cir. 2001). * * * [W]e review legal conclusions de novo, and we review factual findings under the "clearly erroneous" standard. *Glendale Fed. Bank, FSB v. United States*, 239 F.3d 1374, 1379 (Fed. Cir. 2001). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 92 L.Ed. 746, 68 S.Ct. 525 (1948).

*Maritrans Inc. v. United States*, 342 F.3d 1344, 1350-1351 (Fed.Cir.2003). *Accord Rose Acre Farms, Inc. v. United States*, 559 F.3d 1260, 1266 (Fed.Cir.2009).

{¶ 14} As to the substantive law, the Fifth Amendment to the U.S. Constitution guarantees that private property shall not be "taken for public use, without just compensation." The Supreme Court has recognized that "if [land use] regulation goes too far, it will be recognized as a taking." *Pa. Coal Co. v. Mahon*, 260 U.S. 393, 415, 43 S.Ct. 158, 67 L.Ed. 322 (1922). Later, in *Penn Cent.*, 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631, the Supreme Court set forth the standard for determining whether a "partial" regulatory taking has occurred. As explained in *State ex rel. Shelly Materials, Inc. v. Clark Cty. Bd. of Commrs.*, 115 Ohio St.3d 337, 2007-Ohio-5022, 875 N.E.2d 59,

> *Penn Cent.* recognizes an ad hoc, factual inquiry that requires the examination of the following three factors to determine whether a regulatory taking occurred in cases in which there is no physical invasion, and the regulation deprives the property of less than 100 percent of its economically viable use: (1) the economic impact of the regulation on the claimant, (2) the extent to which the regulation has interfered with distinct investment-backed expectations, and (3) the character of the governmental action.

*Id.* at ¶ 19. *See also State ex rel. Gilbert v. Cincinnati*, 125 Ohio St.3d 385, 2010-Ohio-1473, 928 N.E.2d 706, ¶ 17; *State ex rel. Horvath v. State Teachers Retirement Bd.*, 83 Ohio St.3d 67, 71, 697 N.E.2d 644 (1998).

## 1. Economic Impact

{¶ 15} Beginning with the issue of the economic impact of the city's denial of conditional-use approval, we note that a loss of market value, without more, does

not constitute a taking. *State ex rel. Anderson v. Obetz*, 10th Dist. Franklin No. 06AP-1030, 2008-Ohio-4064, ¶ 68, citing *State ex rel. BSW Dev. Group v. Dayton*, 83 Ohio St.3d 338, 344, 1998-Ohio-287, 699 N.E.2d 1271. *Accord Florida Rock Indus. v. United States*, 18 F.3d 1560, 1570 (Fed.Cir.1994) (differentiating partial takings from noncompensable "mere diminutions."). A 13 percent diminution in value was deemed insufficient in *Maritrans*, 342 Fed.3d at 1358. Indeed, 46-60 percent diminutions of value have been deemed insufficient to constitute takings. *See generally Brace v. United States*, 72 Fed. Cl. 337, 346-347 (Fed. Cl. 2006); *Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Trust for S. Cal.*, 508 U.S. 602, 644, 124 L.Ed.2d 539, 113 S.Ct. 2264 (1993).

{¶ 16} In this matter, the record indicates that although Lorain Fulton was denied the conditional use approval for the 86-foot frontage, there were numerous other uses for the property, and the property remained extremely economically viable after the denial. Significantly, the McDonald's ground lease was contingent upon Lorain Fulton obtaining "all permits, * * * special use permits, licenses, permissions, approvals or other authorizations necessary for construction and operation of a McDonald's restaurant * * * built according to Tenant's plans and specifications." When that ground lease was terminated, Lorain Fulton sold the property to MetroHealth for $1,175,000. It realized 78 percent of their expected sale price from the McDonald's deal, i.e., $1,175,000 rather than $1,500,000. Even with the claimed 22 percent decline, Lorain Fulton nonetheless realized a sizeable profit on the original $600,000 investment. Therefore, we conclude that the trial court

did not err in finding that this factor did not support the required showing needed to establish a partial taking under *Penn Cent.*

## 2. Interference With Investment-Based Expectations

{¶ 17} In considering the city's interference with distinct investment-backed expectations, we note that the reasonable expectations of an acquirer of land must acknowledge legitimate restrictions affecting his or her subsequent use and dispensation of the property. *Murr v. Wisconsin*, 582 U.S. ____, 137 S.Ct. 1933, 1945, 198 L.Ed.2d 497 (2017). A valid takings claim will not evaporate just because a purchaser took title after the law was enacted, but a reasonable restriction that predates a landowner's acquisition of property can be one of the objective factors that most landowners would reasonably consider in forming fair expectations about their property. *Id.*, citing *Palazzolo v. Rhode Island*, 533 U.S. 606, 627, 121 S.Ct. 2448, 150 L.Ed.2d 592 (2001). The purchase price and the regulatory regime in place at the time of purchase can reflect the reasonableness of the property owner's expectations. *Id. See also Wymsylo v. Bartec, Inc.*, 132 Ohio St.3d 167, 2012-Ohio-2187, 970 N.E.2d 898, ¶ 57.

{¶ 18} In this matter, although the court in *Lorain Fulton I* determined that the conditional-use approval was erroneously denied, it is undisputed that the property was in the city's PRO at the time of purchase. During the pendency of the city's appeal in *Lorain Fulton I*, McDonald's terminated the lease, but Lorain Fulton sold the parcel and realized a profit of almost $600,000 from the sale to MetroHealth. Lorain Fulton's reasonable expectations of a profit were realized

despite the lower anticipated sale price, given the substantial gain in relation to the $600,000 purchase price.

### 3. Character of Governmental Action

{¶ 19} Regarding the character of the government action at issue, this factor considers the interference that arises from public regulation adjusting the benefits and burdens of economic life to promote the common good. *Penn Cent.,* 438 U.S. at 124, 98 S.Ct. 2646, 57 L.Ed.2d 631. Under the Fifth Amendment, the government may not force some people alone to bear public burdens that in fairness and justice should be borne by the public as a whole. *Id.* at 123, 98 S.Ct. 2646, 57 L.Ed.2d 631.

{¶ 20} In this matter, the record indicates that the purpose of the PRO district is to "maintain the economic viability of older neighborhood shopping districts by preserving the pedestrian-oriented character of those districts and to protect public safety[.]" The trial court in *Lorain Fulton I* determined that the city erroneously denied the requested conditional-use approval. *See Lorain Fulton I,* 8th Dist. Cuyahoga No. 104561, 2017-Ohio-971. In this action alleging a partial taking, the trial court recognized that the city treated Lorain Fulton less favorably than Hansa Haus, a similarly situated business. Additionally, the court held that the city's "interference with [Lorain Fulton's] business contract can be viewed as draconian or even abusive[.]"

{¶ 21} However, in applying all of the elements of the ad hoc factual inquiry set forth in *Penn Cent.,* this trial court concluded that no partial regulatory taking had occurred. Reviewing the legal conclusions de novo and the factual findings

under the "clearly erroneous" standard, we find no reversible error. Overall, Lorain Fulton suffered only a relatively small diminution from their expected profit, and realized a significant gain, given the purchase price. The economic impact does not support a taking. Reasonable investment-based expectations were not sufficiently impacted to create a taking. We reiterate: a *Penn Cent.* taking does not arise merely because a regulatory action deprives the property owner of one proposed use, even if it is the most profitable use of the property. *State ex rel. Anderson*, 2008-Ohio-4064 at ¶ 66.

{¶ 22} The second assigned error lacks merit.

{¶ 23} Judgment is affirmed.

It is ordered that appellee recover from appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

PATRICIA ANN BLACKMON, PRESIDING JUDGE

KATHLEEN ANN KEOUGH, J., and
MICHELLE J. SHEEHAN, J., CONCUR