[Cite as *Lake Park Estates Pond Assn. v. Brecksville*, 2024-Ohio-660.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF OHIO

| | | |
|---|---|---|
| LAKE PARK ESTATES POND ASSOCIATION, ET AL., | : | |
| | : | |
| Plaintiffs-Appellants, | : | No. 112589 |
| | : | |
| v. | : | |
| | : | |
| THE CITY OF BRECKSVILLE, OHIO, ET AL., | : | |
| | : | |
| Defendant-Appellee. | : | |

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED AND REMANDED
**RELEASED AND JOURNALIZED:** February 22, 2024

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-21-948430

---

### *Appearances:*

The Lindner Law Firm, LLC, and Daniel F. Lindner, *for appellants*.

Mazanec, Raskin & Ryder Co., L.P.A., John T. McLandrich, Frank H. Scialdone, and Terence L. Williams; David J. Matty, Brecksville Director of Law, *for appellee*.

SEAN C. GALLAGHER, J.:

{¶ 1} Plaintiffs-appellants Lake Park Estates Pond Association, et al., appeal the decision of the trial court that granted the motion for summary judgment

of defendant-appellee the city of Brecksville, Ohio ("the city"), upon finding the city is entitled to political-subdivision immunity in this matter and that denied the plaintiffs-appellants' motion for summary judgment. Upon review, we affirm the decision of the trial court and remand the case.

## I.     Background

{¶ 2} The Lake Park Estates Pond Association ("the LPE Pond Association") was formed by a group of property owners whose lots abut and extend under a pond in the Lake Park Estates Subdivision in Brecksville, Ohio.[1] On June 7, 2021, the LPE Pond Association and the property owners (collectively "the appellants") filed a verified complaint for declaratory judgment, specific performance, writ of mandamus, monetary, and other relief. They asserted, among other allegations, that the city has failed to maintain and repair the pond and its man-made structures, which the appellants allege are part of the city's stormwater sewer system. The appellants raised claims against the city for declaratory judgment under the Ohio Constitution — procedural and substantive due process (Count I), declaratory judgment under the Ohio Constitution — takings (Count II), mandamus — inverse condemnation (Count III), and trespass (Count IV). The

---

[1] The property owners, who are also plaintiffs-appellants in this action, include Eric and Jill Tayfel, James and Rachel Jones, Kevin and Allision Dranuski, Fred and Annette Pedersen, and John Turner.

appellants' claims against another defendant were bifurcated and are not involved in this appeal.[2]

{¶ 3} In its answer, the city asserted, among other affirmative defenses, the defense of political-subdivision immunity. The appellants and the city filed cross-motions for summary judgment, and the trial court conducted a hearing on the city's defense of political-subdivision immunity. Thereafter, the trial court ruled in favor of the city.

{¶ 4} The record reflects that the pond at issue has existed since the Lake Park Estates Subdivision was developed. The pond is man-made; it has a headwall that dams the naturally formed stream that feeds it and drains it, and it has an outlet structure that helps control the water-elevation level in the pond. In the past few years, the pond's headwall and outlet structure, which are located on the property owned by Eric and Jill Tayfel, have fallen into disrepair, causing the water level in the pond to drop.

{¶ 5} The parties dispute who is responsible for the repair and maintenance of the pond and its associated structures. The appellants claim that the pond is a part of the city's stormwater sewer system and a public use. The city maintains that the pond is on private property, that it serves no necessary stormwater conveyance purposes, and that the pond exists solely for the aesthetic benefit of the appellants.

---

[2] The appellants also raised claims against another property owner, Julian Colonna, Trustee of the Julian Colonna Trust UTD 10/6/2017, who is not a member of the LPE Pond Association.

{¶ 6} At a 1959 Brecksville Planning Commission meeting, it was represented by the developer that the property owners having lots on the pond would own the pond and take care of their own sections of the pond. The pond was present when each of the individual appellants purchased their property. There is no evidence that the pond was designed to be a part of the city's stormwater sewer system.

{¶ 7} According to Gerald Wise, the city's engineer, the pond was not created by the city, the city does not hold any easements related to the pond or its outlet structure, and the pond was never dedicated for public use. Although the city utilizes an inlet structure to permit the flow of water into the pond, the inlet permits water from the city's stormwater sewer system to follow its natural watercourse through the pond.

{¶ 8} According to the city, it did not build the pond; rather, the pond was created prior to or when the development was built, and it was formed by adding an embankment and control structure to dam the natural watercourse to create an aesthetic water feature. The city maintains that the appellants, as riparian owners, are able to utilize the natural watercourse to create the pond or they can remove the headwall and outlet structure and allow the water to continue on the natural watercourse to the downstream properties, with no effect on the stormwater management system. Further, there is no evidence of any flooding of the appellants' properties, either before or after the outlet structure's failure.

{¶ 9} Michael Menoes, a registered professional engineer retained by the city, indicated in his affidavit that the presence or absence of the pond does not affect the stormwater management to the appellants, any upstream owner, or any downstream owner. Menoes stated in his report that the removal of the subject pond would reduce the risk of flooding for homes located adjacent to the pond. He also stated that the removal would cause only a small increase in downstream maximum water surface elevation during a rainfall event having a 10-year return, and that to the extent removal of the subject pond would cause a significant increase in the maximum water surface elevation of a downstream pond during a rainfall event having a 100-year return period, it would still be several feet below the top elevation of the pond.

{¶ 10} Other evidence was presented in the matter that we have also reviewed. Ultimately, on April 4, 2023, the trial court granted the city's motion for summary judgment upon determining that the city is entitled to political-subdivision immunity, and the trial court denied the appellants' motion for summary judgment.[3] This appeal followed.

## II. Assignments of Error

{¶ 11} Under their first assignment of error, the appellants claim the trial court erred by granting the city immunity and by granting summary judgment on all counts of the complaint. The appellants assert that "when a municipality

---

[3] The trial court included Civ.R. 54(B) language in its judgment entry.

superimposes its storm sewer system upon a natural watercourse, the defense of sovereign immunity does not preclude liability for damages caused by any attendant abridgment of riparian rights" and that "[the city] is statutorily bound to repair and maintain the pond and its structure as part of its stormwater sewer system because decisions involving the proper maintenance of the sewer or drainage system is a proprietary act which is mandatory and not discretionary."

{¶ 12} Under its second assignment of error, appellants assert the trial court erred in denying their motion for summary judgment. Appellants claim they are "entitled to a writ of mandamus compelling Brecksville to commence appropriation proceedings to assess just compensation and damages due to appellants for Brecksville's taking of appellants' properties and trespass thereon."

### III. Law and Analysis

{¶ 13} Appellate review of summary judgment is de novo, governed by the standard set forth in Civ.R. 56. *Argabrite v. Neer*, 149 Ohio St.3d 349, 2016-Ohio-8374, 75 N.E.3d 161, ¶ 14. Summary judgment is appropriate only when "[1] no genuine issue of material fact remains to be litigated, [2] the moving party is entitled to judgment as a matter of law, and, [3] viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can reach a conclusion only in favor of the moving party." *Id.*, citing *M.H. v. Cuyahoga Falls*, 134 Ohio St.3d 65, 2012-Ohio-5336, 979 N.E.2d 1261, ¶ 12.

{¶ 14} The city is a political subdivision that pursuant to R.C. 2744.02(A)(1) generally "is not liable in damages in a civil action for injury, death, or loss to person

or property allegedly caused by an act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." R.C. 2744.02(B) lists several exceptions to the general grant of immunity, and if an exception applies, R.C. 2744.03 provides defenses to liability that may be asserted to restore immunity.

{¶ 15} Appellants claim the R.C. 2744.02(B)(2) exception to the general grant of immunity applies to this case. R.C. 2744.02(B)(2) states: "Except as otherwise provided in sections 3314.07 and 3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to person or property caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions." R.C. 2744.01(G)(2)(d) defines a "proprietary function" to include "[t]he maintenance, destruction, operation, and upkeep of a sewer system[.]"

{¶ 16} Contrary to appellants' arguments, the evidence in the record before us fails to show that the pond and its outlet structure are part of the city's stormwater sewer system. The cases upon which appellants rely are all distinguishable. For instance, in *Economus v. Independence*, 8th Dist. Cuyahoga No. 107713, 2020-Ohio-266, there was evidence showing the city of Independence possessed a storm sewer-drainage ditch easement as well as an easement over the retention basin, the city had performed maintenance in these areas and dredged the retention basin in the past, and the alleged failures led to flooding and property damage. *Id*. at ¶ 26-30. In *Nelson v. Cleveland*, 8th Dist. Cuyahoga No. 98548, 2013-Ohio-493, it was

alleged that the city of Cleveland failed to maintain or clean out its sewers and catch basins and that this led to a large unnatural accumulation of a pool of water on a roadway that caused an accident. *Id*. at ¶ 20-25. In *Accurate Die Casting Co. v. Cleveland*, 2 Ohio App.3d 386, 442 N.E.2d 459 (8th Dist.1981), the city did not design its storm sewer system to merely conjoin a natural watercourse, but rather, it enclosed the "entire watercourse" within storm sewer pipes so that no portion thereof continued to flow in its natural state and flood damage occurred. *Id*. at 390. This case does not involve any similar circumstances.

{¶ 17} Although the appellants' engineering expert George Hess opined that the pond and the outlet structure are an integral part of the city's stormwater sewer and drainage system, this and his other conclusory assertions lack evidentiary support in the record and are insufficient to create any genuine issue of material fact. The record shows that the pond is situated on private property and that the city did not construct, and has never maintained, the pond or its outlet structure. Further, the pond was never dedicated to the city, and the city has no easement over the pond or its outlet structure. Water flows from the city's stormwater sewer system along its natural watercourse through the pond, and the inlet structures identified by appellants convey water along the preexisting natural watercourse. The record also shows the pond is not necessary to the city's stormwater management system, there has been no flooding, and the collapse of the outlet drain has caused the water level in the pond to be lowered. After reviewing the record, we find the appellants have failed to produce evidence upon which to establish the pond

at issue and its outlet structure are a part of the city's public stormwater sewer system. The R.C. 2744.02(B)(2) exception to the general grant of immunity to a political subdivision does not apply in this case.

{¶ 18} While appellants argue the loss of the pond or eradication of its shoreline have been caused by the city's failure to maintain and repair the pond and its structures, "Ohio courts have held that a city has no duty to maintain a private drainage system on private property unless it has been established or used for public purposes." *Economus* at ¶ 24, citing *Bibbs v. Cinergy Corp.*, 1st Dist. Hamilton No. C-010390, 2002-Ohio-1851. It also is well settled that generally, "[a]n upstream municipality may collect, by means of sewers, the surface water from a watershed area within the corporate limits and channel it into a natural watercourse" without incurring liability to downstream landowners. *Munn v. Horvitz Co.*, 175 Ohio St. 521, 196 N.E.2d 764 (1964), paragraph one of the syllabus, citing *Mason v. Commrs. of Fulton Cty.*, 80 Ohio St. 151, 88 N.E. 401 (1909). Moreover, "a municipal corporation may make reasonable use of a natural watercourse to drain surface water" and it generally is "not liable for increased flow caused simply by improvement of lots and streets * * *." *Masley v. Lorain*, 48 Ohio St.2d 334, 340, 358 N.E.2d 596 (1976), citing *Hamilton v. Ashbrook*, 62 Ohio St. 511, 57 N.E. 239 (1900).

{¶ 19} The record simply does not support appellants' claims that a taking or trespass has occurred in this matter. Here again, the cases cited by appellants in support of their arguments are distinguishable from this case. In *State ex rel.*

*Gilbert v. Cincinnati*, 125 Ohio St.3d 385, 2010-Ohio-1473, 928 N.E.2d 706, there was evidence that the city deposited sewage into the natural watercourse so as to cause physical interference with the landowners' use and enjoyment of their property. *See id.* at ¶ 30-31. In *McNamara v. Rittman*, 107 Ohio St.3d 243, 2005-Ohio-6433, 838 N.E.2d 640, there was evidence that the cities' construction impacted the water supplies of the homeowners and the court recognized a property right in groundwater located beneath their land. *Id.* at ¶ 245. In *McKee v. Akron*, 176 Ohio St. 282, 285, 199 N.E.2d 592 (1964), the homeowner alleged damage to her property from an odor arising from a city's sewage disposal plant. *Id.* at 283. In *Lucas v. Carney*, 167 Ohio St. 416, 149 N.E.2d 238 (1958), the construction of a public improvement on county property greatly increased the amount of water flowing onto the plaintiff's land and caused frequent flooding on the plaintiff's property. *Id.* at 417-419. None of those circumstances are present herein, and the other cases cited by appellants are also distinguishable. The record in this case does not support any of appellants' claims, and we are not persuaded by appellants' arguments otherwise.

{¶ 20} After thoroughly reviewing the record, we find the city is entitled to political-subdivision immunity in this case and that the trial court properly ruled upon the cross-motions for summary judgment.[4] The appellants' assignments of error are overruled.

---

[4] We do not consider the city's statute-of-limitations arguments, which were not addressed by the trial court in the first instance.

{¶ 21} Judgment affirmed. The case is remanded because there were bifurcated claims against the remaining defendant.

It is ordered that appellee recover from appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
SEAN C. GALLAGHER, JUDGE

EILEEN A. GALLAGHER, P.J., and
MARY J. BOYLE, J., CONCUR