{¶ 1} This matter came to be considered by this Court on a petition for a writ of mandamus filed by Relator, Shelly Materials, Inc. ("Shelly") against the Respondents, Clark County Board of Commissioners ("the Board"). On November 30, 2004, the Board filed a motion for judgment on the pleadings, which we denied July 15, 2005. On June 9, 2005, the Board filed a motion for summary judgment, to which Shelly responded with a memorandum in opposition on July 21, 2005. On September 6, 2005, the Board filed its response to the memorandum in opposition. Finally, on September 15, 2005, Shelly filed its own motion for summary judgment against the Board. The Board filed its response to Shelly's motion on October 19, 2005, and Shelly filed its reply to the Board's memorandum contra on November 29, 2005.
 {¶ 2} This case arises from Shelly's attempt to obtain a conditional use permit to operate a sand and gravel mining facility on its property on County Line Road in Moorefield Township, Clark County, Ohio. Following hearings before the Clark County Board of Zoning Appeals ("BZA"), Shelly's application for a conditional use permit was denied. Shelly appealed to the Clark County Court of Common Pleas, which affirmed the decision of the Board of Zoning Appeals. Shelly then filed an appeal with this Court and we affirmed the decisions below. Shelly Materials v.Daniels (2003), Clark App. No. 2002-CA-13, 2003-Ohio-51.
 {¶ 3} Shelly now asks this Court, in its petition for a writ of mandamus, to order the Board to institute appropriation proceedings. Shelly asserts that the actions of the Board of Zoning Appeals, in denying its conditional use permit, amount to a taking of its property. Indeed, Shelly asserts that because it is not permitted to extract the sand and gravel from its property, it is entitled to compensation for the taking of this property right. Thus, Shelly asks this Court to issue a writ of mandamus compelling the Board to institute appropriation proceedings for this property.
 {¶ 4} In the Board's motion for summary judgment, however, it asserts that Shelly is barred by res judicata from raising a takings claim because Shelly failed to raise the issue in the direct appeal. Additionally, the Board asserts that even if Shelly is not barred by res judicata, a compensable taking has not occurred because Shelly has not been deprived of all economically viable use of their land.
 {¶ 5} "Summary judgment pursuant to Civ.R. 56 should be granted only if no genuine issue of fact exists, the moving party is entitled to judgment as a matter of law, and reasonable minds can come to but one conclusion, which conclusion is adverse to the nonmoving party. When considering a motion for summary judgment, the evidence must be construed in favor of the nonmoving party." Wheelbarger v. Dayton Bd. of Edn. (Aug. 20, 2004), Mont. App. No. 20272, 2004-Ohio-4367 (internal citations omitted).
 {¶ 6} It is apparent from examination of the various memoranda in support and against summary judgment that there are three central issues which require resolution: First, whether the claims asserted herein that were already addressed in the direct appeal are barred by res judicata; second, whether Shelly's claim that a compensable taking occurred should have been raised in the direct appeal and is thus barred by res judicata; and third, if Shelly was not required to raise the takings claim in the direct appeal, whether a compensable taking occurred, requiring us to issue a writ of mandamus ordering appropriation proceedings.
 {¶ 7} First, the Board asserts that several of Shelly's claims, which were raised in the direct appeal, are barred by res judicata. Those claims are: (1) that the BZA arbitrarily applied the conditional use guidelines; (2) that those guidelines are unconstitutional as overly subjective; and (3) that the BZA's decision denying the permit was not supported by sufficient evidence. From its complaint in mandamus it does not appear that Shelly is attempting to raise these issues. However, to the extent Shelly was attempting to do so, the review of such claims is barred by the doctrine of res judicata. See Grava v. ParkmanTwp. (1995), 73 Ohio St.3d 379, paragraph one of syllabus ("a valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action.").[1]
 {¶ 8} Next, we address the Board's argument that Shelly's "takings" claim is barred by res judicata because Shelly failed to raise it on direct appeal. The Ohio Supreme Court has stated that "[a] judgment or decree in a former action does not bar a subsequent action where the causes of action are not the same, even though each action relates to the same subject matter. To determine whether a second action was barred by this rule of law, one of the primary considerations was the identity of the evidence necessary to sustain each action." Grava,73 Ohio St.3d at 381 (internal citations omitted).
 {¶ 9} In its direct appeal, the only issue raised by Shelly, and thus the only issue addressed by this Court, was the validity of the BZA's decisions regarding the conditional use permit. A determination by either the court of common pleas or this court that the denial of the conditional use permit was improper would have foregone the necessity of bringing a takings claim. Thus, the takings claim arose only after we affirmed the decision of the BZA and the common pleas court. Therefore, even though both actions relate to the County Line Road property purchased by Shelly, the causes of action are distinct and require different evidence to sustain them. Consequently, Shelly's takings claim is not barred by res judicata.
 {¶ 10} Having determined that Shelly's takings claim is not barred by res judicata, we turn now to Shelly's claim that the denial of the conditional use permit resulted in a "regulatory taking." "Mandamus is the appropriate action to compel public authorities to institute appropriation proceedings where an involuntary taking of private property is alleged." State exrel. Shemo v. City of Mayfield Heights (2002),95 Ohio St. 3d 59, 63, 2002-Ohio-1627. To be entitled to the extraordinary relief of a writ of mandamus where a regulatory taking is alleged, the Relator must establish: (1) that the application of the particular zoning ordinance to the property in question does not substantially advance a legitimate state interest; or (2) that the application of the zoning ordinance denied the landowner all economically viable use of his land. Id. This test is disjunctive. Thus, the Relator need only prove one of the above two prongs to establish the existence of a taking. Id.
 {¶ 11} "Ohio follows the rule that `the power of the municipality to establish zones and classify property accordingly, is purely a legislative function which will not be interfered with by the courts, unless such power is exercised in an arbitrary, confiscatory and unreasonable manner in violation of constitutional guarantees.'" Shelly, supra at ¶ 109 citingBalsly v. Clennin (1964), 3 Ohio App.2d 1, 4. Zoning ordinances and regulations are presumed to advance a legitimate state interest and thus are constitutional. See Goldberg Cos., Inc.,v. Richmond Hts. City Council (1998), 81 Ohio St.3d 207,209-210, 1998-Ohio-207. Indeed in Shelly, we determined that the application of the regulations had sufficient criteria to prevent arbitrary enforcement and were thus constitutional.Shelly at ¶¶ 86-111. Thus, as Shelly is unable to prove that the application of the zoning ordinance does not advance a legitimate state interest, it must show that the application of the zoning ordinance denies it all economically viable use of its land to be entitled to mandamus.
 {¶ 12} "A landowner does not have a right to have his land zoned for its most advantageous economic use." Smythe v. ButlerTwp. (1993), 85 Ohio App.3d 616, 621. Rather, the central inquiry is whether the regulation denies an owner all
economically viable use of his land. See e.g., Andrus v. Allard
(1979), 444 U.S. 51, 66 (denial of takings claim even though it was "undeniable that the regulations here prevent the most profitable use of [the] property"). Thus, at issue here is whether a question of fact exists as to whether the denial of the conditional use permit denies Shelly all economically viable use of its property.
 {¶ 13} In Community Concerned Citizens, Inc. v. Union Twp.Bd. Of Zoning Appeals, (1993), 66 Ohio St.3d 452, the Ohio Supreme Court held that the denial of a conditional use permit was not a compensable taking under the Fifth orFourteenth Amendments to the United States Constitution. In that case, the Union Township BZA denied the request for a conditional use permit to operate a child day care center on Community's property. The Ohio Supreme Court stated that because the property was purchased with the knowledge that a day care center was a conditional use, the fact that it was not permitted to construct and operate a day care center did not deprive Community of "all economically beneficial uses" of its property. Id. at 458.
 {¶ 14} The holding in Community controls this case. Here, Shelly purchased the property with knowledge that a conditional use permit was required to mine the sand and gravel below the property. Shelly was denied the conditional use permit, but as we will discuss infra, Shelly was not denied all economically beneficial uses of its property.
 {¶ 15} The property which Shelly purchased at County Line Road is zoned A-1 Agricultural. This type of zoning regulation permits many other uses besides "Resource and Mineral Extraction" for which Shelly originally purchased the property. The land may be converted into a low density single family residential neighborhood, as was Shelly's plan for the land after extracting sand and gravel for 20 years. (Schwab Land Use Planning Report p. 2). The A-1 zoning designation permits lots of one acre in size to be used for residential purposes, which allows 300 residences to be developed on the 300 acre County Line Road property purchased by Shelly. (Clark County Zoning Regs. Ch. 2, Sec. A). Further, the A-1 zoning designation conditionally permits, without the acquisition of a use permit, the building of Private and Public Outdoor Recreation Areas, Primary and Secondary Schools, Hospitals and Auxiliary Facilities, Animal Hospitals, Radio Towers, and Bed and Breakfasts. Id. With all of these potential uses, this Court finds that there is no genuine issue of material fact that Shelly has not been denied all economically viable use of its land.
 {¶ 16} Although Shelly is in the business of sand and gravel extraction and not residential development, at a minimum it posseses the ability to resell the land to a developer who could use the property in a manner consistent with current zoning laws. This may not be what Shelly envisioned when purchasing the property. However, Shelly accepted the investment risk when it purchased the property in a "regulated environment, [and it] cannot look to the Fifth [and Fourteenth] Amendment when such speculation proves ill-taken." Good v. U.S. (1997), 39 Fed. Cl. 81, 114.
 {¶ 17} This Court's determination that Shelly has not been deprived of all economically viable use of its land may not necessarily bar Shelly from recovery. It is well established that compensation may be provided for a partial regulatory taking.Penn. Central Transp. Co. v. City of New York (1978),438 U.S. 104, 124. The inquiry as to whether a partial regulatory taking occurred requires an ad hoc examination of three factors: (1) the economic impact on the landowner, (2) the extent the regulation has interfered with reasonable investment-backed expectations, and (3) the character of government action. State ex rel.Horvath v. State Teachers Retirement Bd. (1998), 67, 71, 1998-Ohio-424.
 {¶ 18} Our examination of the evidence presented leads us to conclude that the denial of the conditional use permit has not resulted in a scenario where compensation for a partial regulatory taking is justified. First, Shelly has failed to present evidence to show that using the land in a manner allowed by the regulations or resale of the land would have a detrimental impact on Shelly. Second, although Shelly was expecting to purchase the land for the excavation of subsurface sand and gravel, it was well aware that it would first be required to obtain a conditional use permit, and it was not guaranteed that Shelly would receive it. (Montgomery Aff. ¶¶ 16-17; Rice Aff. ¶ 9). Finally, zoning regulations have been consistently upheld as permissible government action even when it prohibits the most beneficial use of the property. See Penn. Central,438 U.S. at 125.
 {¶ 19} However, instead of relying on the traditional ad hoc analysis for partial takings, Shelly asserts that it was deprived of all economically viable use of part of its land, namely the subsurface sand and gravel. Shelly asserts that the denial of the conditional use has denied it "all economic value associated with its sand and gravel property." In support of this assertion, Shelly relies on several cases from the Ohio Supreme Court which have recognized mineral rights as a separate property interest and thus subject to compensable takings claims. See e.g., Stateex rel. R.T.G., Inc. v. State (2002), 98 Ohio St.3d 1.
 {¶ 20} We find these cases to be distinguishable from the case at hand. RTG was a coal-mining company that purchased land in eastern Ohio. Id. After purchasing the land RTG was able to begin surface-mining of the land to extract the coal because a conditional use permit was granted. Id. at 2-3. However, subsequently the Ohio Reclamation Board of Review designated 833 acres of land as "unsuitable for mining," much of which was RTG coal mining land. Id. at 3. The Court held that a compensable taking had occurred because RTG had purchased the land for a specific purpose, received permission to conduct that conditional use (coal mining), and then later its "vested rights" were frustrated by a subsequent regulatory action. Id. at 2.
 {¶ 21} The scenario in the instant case is quite different than that in RTG. Here, Shelly never had a vested right to mine the sand and gravel on its property. Indeed, when Shelly purchased the property on County Line Road in Moorefield Township it was aware that a conditional use permit was required before it could mine the sand and gravel beneath the property. (Montgomery Aff. ¶¶ 16-17). Although Shelly believed it would have no problems in acquiring the conditional use permit, it did not acquire the property with the unconditional right to mine the subsurface sand and gravel on the property. (Id.). Unlike inRTG, the zoning regulations in the present case were in place at the time Shelly purchased the property. We conclude that having purchased the property subject to specific zoning regulations and the acquisition of a conditional use permit, Shelly is not entitled to compensation for the loss of the right to mine sand and gravel on the property — a right which Shelly did not posses at the time it purchased the property.
 {¶ 22} Thus, after examination of the applicable zoning regulations and evidence presented, we believe that the denial of the conditional use permit has not deprived Shelly of all economically viable use of their land. Shelly has available to it a multitude of different uses to which it can put its property. Having purchased the property without the ability to mine the sand and gravel, we can not say that a compensable taking has occurred, when it was denied a right it never had in the first place. As we believe there is no genuine issue of material fact and that reasonable minds can come to but one conclusion, the Board is entitled to judgment as a matter of law and Shelly is not entitled to appropriation proceedings for a taking of its property on County Line Road.
 {¶ 23} Wherefore, Respondent's motion for summary judgment is GRANTED and Relator's motion for summary judgment is OVERRULED. The Relator's petition for mandamus is DENIED and this matter is DISMISSED.
 {¶ 24} IT IS SO ORDERED.
Brogan, Presiding and Administrative Judge, Wolf, Jr., Judge and Donovan, Judge.
[1] In its response to the Board's motion for summary judgment, Shelly asserts that it did not have a full and fair opportunity to litigate the issues in the prior appeal because it was limited to the narrow record of the BZA hearings, and subsequently it has conducted depositions of the members of the BZA. However, this "new" evidence is not pertinent to the BZA's decision denying the conditional use permit, because both the common pleas court and this Court affirmed the decision of the BZA as being supported by sufficient evidence and determined that the conditional use guidelines were properly applied.