[Cite as *State ex rel. GreenAcres v. Cincinnati*, 2015-Ohio-5479.]

# IN THE COURT OF APPEALS

# FIRST APPELLATE DISTRICT OF OHIO

# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE EX REL. | : | APPEAL NO. C-150038 |
| GREENACRES FOUNDATION, | | TRIAL NO. A-1403030 |
| | : | |
| Plaintiff-Relator-Appellee, | | |
| | : | *O P I N I O N.* |
| vs. | | |
| | : | |
| CITY OF CINCINNATI, | : | |
| Defendant-Respondent- | | |
| Appellant. | : | |

Civil Appeal From: Hamilton County Court of Common Pleas

Judgment Appeal From Is: Affirmed as Modified

Date of Judgment Entry on Appeal: December 30, 2015

*Barrett & Weber,* and *C. Francis Barrett,* and *White Getgey & Meyer Co.*, *L.P.A.*, and *David Kamp*, for Plaintiff-Relator-Appellee,

*Paula Boggs Muething*, City Solicitor, and *Emily E. Woerner*, Assistant City Solicitor, for Defendant-Respondent-Appellant.

Please note: this case has been removed from the accelerated calendar.

**FISCHER, Presiding Judge.**

{¶1}   Defendant-respondent-appellant, city of Cincinnati ("City") appeals the trial court's granting of a writ of mandamus to compel the City to commence appropriation proceedings based on its temporary regulatory taking of property, known as the "Gamble House," owned by plaintiff-relator-appellee Greenacres Foundation ("Greenacres"), an Ohio not-for-profit corporation.

{¶2}   The city argues the trial court erred in granting the writ of mandamus because Greenacres's claims are barred by the statute of limitations and res judicata, and alternatively, that Greenacres failed to show by clear and convincing evidence that a regulatory taking had occurred.  The City further argues that the trial court erred in entering findings of fact and conclusions of law without conducting an evidentiary hearing or permitting the City to conduct discovery.  Finding none of the city's arguments meritorious, we affirm the judgment of the trial court.

## I.   Factual and Procedural Posture

{¶3}   Greenacres is a charitable foundation that owns a 22-acre site in the Westwood neighborhood of Cincinnati.   On February 18, 2010, Greenacres applied for a permit to demolish one of the structures on the property, an existing single family home that had been uninhabited since 1961, and that was in an extremely dilapidated state.  Because the home had been inhabited at one time by James N. Gamble, who was the son of one of the founders of Procter & Gamble, the house had become known as the "Gamble House." At the time Greenacres sought the demolition permit, the separate 2.85-acre parcel that the Gamble House was situated on, had been zoned SF-10, single family residential district with no historic overlay.

2

### A. 2010 Common Pleas Court Action

{¶4}   When Amit B. Ghosh, the City's chief building official, declined to act on the permit because of purported historic issues relating to the Gamble House, Greenacres filed a complaint in the common pleas court on February 24, 2010, for a writ of mandamus and for a temporary restraining order, preliminary injunction, and permanent injunction.  Greenacres sought the writ to compel Gosh to issue the demolition permit or, alternatively, to show cause within 30 days why the court should not compel the issuance of the permit.

{¶5}   At a February 26, 2010 hearing on the writ before the common pleas court, the City represented that no determinations had yet been made regarding the issuance of the permit, because Ghosh had not yet completed his review.  It asked the court to dismiss the writ as premature.  Instead, the trial court issued a show-cause order, which required the City to either issue the demolition permit or appear before the court and show cause why the permit should not be issued.  The trial court scheduled a hearing for 30 days later.

{¶6}   The City appealed and moved for an expedited stay of the court's issuance of the writ.  On March 17, 2010, this court dismissed the City's appeal.  The City appealed to the Ohio Supreme Court and again moved for an expedited stay of the writ.  While the City's appeal was pending before the Supreme Court, Greenacres twice amended the complaint.  The first amendment, in March 2010, added a claim for damages.  The second amendment, in May 2010, added additional claims for a declaratory judgment and a regulatory taking.

{¶7}   On May 27, 2010, the City removed the common pleas court action to federal court and asked the federal district court to stay the proceeding pending a

decision from the Ohio Supreme Court. On June 7, 2010, Greenacres voluntarily dismissed in the common pleas court its claims for a declaratory judgment and for the regulatory taking. Greenacres subsequently filed a third verified complaint in the federal district court seeking a writ of mandamus to compel the demolition permit, injunctive relief, and damages. On September 16, 2010, the Ohio Supreme Court declined jurisdiction, and the case was remanded to the common pleas court. The federal district court stayed the remaining claims in the 2010 action until they were voluntarily dismissed by Greenacres on February 15, 2013.

## B. The Administrative Proceedings

{¶8} While Greenacres' 2010 writ action was pending before the common pleas court, Ghosh had referred Greenacres's application for a demolition permit to the City's urban conservator, Larry Harris, and the Historic Conservation Board. The Historic Conservation Board determined on March 15, 2010, that the Gamble House was a historic structure under Chapter 1435 of the Cincinnati Zoning Code and that Greenacres needed a Certificate of Appropriateness ("COA") in order to qualify for the demolition permit. Greenacres appealed the determinations of the City's urban conservator and the Historic Conservation Board to two separate administrative bodies, the Board of Building Appeals ("BBA") and the Zoning Board of Appeals ("ZBA").

{¶9} Despite the urban conservator's instruction that an appeal from his decision be taken to the BBA, the BBA, on August 6, 2010, after conducting several sessions and granting the city's request for a continuance to hear from Ghosh, determined that it had no jurisdiction to hear the matter and dismissed Greenacres's

4

appeal. Greenacres appealed the BBA's decision to the common pleas court on August 23, 2010 ("Administrative Appeal 1").

{¶10} On September 13, 2010, the ZBA, after conducting an extensive hearing and making extensive findings of fact and conclusions of law justifying a "historic" designation, determined that "the action that the Historic Conservation Board took on the Gamble House's designation nomination was a 'recommendation' and not a 'decision' within the meaning of the Cincinnati Zoning Code." Accordingly, the ZBA concluded that it was "without jurisdiction to consider th[e] appeal." The ZBA additionally concluded that Greenacres was not entitled to a demolition permit because it had not procured a COA. Greenacres appealed the ZBA's decision to the common pleas court on September 23, 2010 ("Administrative Appeal 2"). The trial court consolidated the two administrative appeals.

{¶11} In the meantime, Cincinnati City Council had adopted Ordinance No. 155-2010 on May 12, 2010, to impose historic district zoning on the 2.85 acres of the property where the Gamble House was located. Ordinance 155-2010 became effective June 11, 2010. On June 15, 2010, the City issued a "Notice of Violation-Vacant Building" order against Greenacres and required it to obtain a "Vacant Building Maintenance License." Greenacres appealed the violation order to the Board of Housing Appeals ("BHA") and requested a waiver of the "Vacant Building Maintenance License," which the BHA denied. Greenacres appealed those determinations to the common pleas court on April 12, 2011 ("Administrative Appeal 3").

{¶12} Greenacres subsequently applied for a COA for the demolition of the Gamble House. Following a hearing, the Historic Conservation Board disapproved

5

Greenacres's request for a COA for demolition of the Gamble House on December 17, 2010. Greenacres appealed that decision to the ZBA, which affirmed the denial of the COA by the Historic Conservation Board. On April 12, 2011, Greenacres appealed the ZBA's decision to the common pleas court ("Administrative Appeal 4").

{¶13} On June 22, 2011, Greenacres appealed the decision of the BBA, which had affirmed the order of the chief building official, requiring Greenacres to restore Gamble House to a safe and sanitary condition and refusing to determine if Greenacres was entitled to a demolition permit ("Administrative Appeal 5").

{¶14} The trial court consolidated Greenacres's last three administrative appeals, and they were referred to a magistrate. Following briefing and argument, the magistrate took the first two consolidated appeals under advisement. The magistrate, after reviewing the entire record, found that the decisions of the ZBA and the BBA were "both illegal and unsupported by the preponderance of substantial, reliable, and probative evidence" on the whole record. The magistrate vacated the decisions of the ZBA and the BBA in the first and second administrative appeals, and remanded the case to Ghosh for issuance of the demolition permit. The City filed timely objections to the magistrate's decision. The trial court overruled the City's objections and adopted the magistrate's decision.

{¶15} On October 17, 2012, this court affirmed the trial court's judgment in favor of Greenacres. *See State ex rel. Greenacres Foundation v. Bd. Bldg. Appeals,* 1st Dist. Hamilton No. C-120131, 2012-Ohio-4784, ¶ 1 ("*Greenacres I*"). We held that because "city council was required to have legislatively designated that a structure was a 'Historic Landmark' or that it was within a 'Historic District' before the provisions of former Cincinnati Municipal Code Chapter 1435 requiring a 'Certificate

6

of Appropriateness' applied [and,] city council had not done so at the time Greenacres had applied for a demolition permit, Greenacres was not required to obtain a 'Certificate of Appropriateness' before a permit could be issued." *Id.* at ¶ 14. Thus, we concluded that Greenacres's application for the demolition permit must be processed according to the law that was in effect at the time it applied for the permit, without reference to the requirements in former Cincinnati Municipal Code Chapter 1435. *Id.* at ¶ 18.

{¶16} On January 13, 2013, the City issued Greenacres its demolition permit. On February 15, 2013, Greenacres voluntarily dismissed the original 2010 common pleas court action that had been removed by the City to the federal court. Greenacres demolished the Gamble House on April 1, 2013. On May 14, 2013, Greenacres and the city entered into agreed, stipulated dismissals of the remaining administrative appeals. On August 7, 2013, the City adopted Ordinance No. 258-2013 to remove the historic district overlay designation from the Gamble House. Ordinance 258-2013 became effective September 6, 2013.

### C. The Current Lawsuit

{¶17} On May 23, 2014, Greenacres filed the current lawsuit seeking a writ of mandamus to compel the City to initiate appropriation proceedings. Greenacres asserted that the City had temporarily deprived it of all economically beneficial use of the Gamble House property during the three-year period that it had unlawfully denied the demolition permit by illegally determining that the Gamble House was a "Historic Landmark" or that it was within a "Historic District" under the provisions of former Cincinnati Municipal Code Chapter 1435 and by requiring it to obtain a COA before the demolition permit could be issued.

7

{¶18} On August 19, 2014, Greenacres filed a motion for judgment on the writ of mandamus. The City opposed the motion and filed a separate motion for judgment on the pleadings. The City asserted that Greenacres's claim was barred as a matter of law and was legally insufficient. The parties entered into an agreed briefing schedule and stipulated to an extensive record containing all the prior proceedings, testimony, and ordinances. On November 14, 2014, Greenacres filed two affidavits in support of its motion for the writ. The trial court held a hearing on the pending motions on November 17, 2014.

{¶19} At the hearing on the motions, the City asked for a continuance of the hearing on Greenacres's motion for the writ, claiming that the two affidavits Greenacres had submitted had raised new factual issues that had not been addressed in the record. The trial court proceeded with argument on the City's motion for judgment on the pleadings and on the writ. Greenacres asserted that it would not object to the City submitting contradictory affidavits. At the end of the hearing, the trial court directed the City to submit any affidavits to support its memorandum contra to the writ by December 4, 2014. The trial court also ordered the parties to submit proposed findings of fact and conclusions of law. Both the City and Greenacres submitted findings of fact and conclusions of law. The City also submitted two affidavits of witnesses in support of its memorandum opposing the writ.

{¶20} Following these submissions, the trial court adopted Greenacres's findings of fact and conclusions of law, denied the city's motion for judgment on the pleadings, and granted Greenacres's motion for a writ of mandamus compelling the

city to initiate appropriation proceedings for the temporary regulatory taking of Greenacres's property rights from February 22, 2010, to September 6, 2013.

## II.    Analysis

{¶21}  In its first assignment of error, the City argues "[t]he trial court erred in granting the writ of mandamus compelling the city to initiate appropriations proceedings for the temporary regulatory taking of Greenacres' real property rights from February 22, 2010 to September 6, 2013."

{¶22}  To be entitled to a writ of mandamus, Greenacres must establish a clear legal right to compel the city to commence appropriation, a corresponding clear legal duty to institute the action, and the lack of an adequate remedy for Greenacres in the ordinary course of law.  *State ex rel. Shelly Materials, Inc. v. Clark Cty. Bd. Of Commrs.*, 115 Ohio St.3d 337, 2007-Ohio-5022, 875 N.E.2d 59, ¶ 15.  Mandamus is the "appropriate action to compel public authorities to institute appropriation proceedings when an involuntary taking of private property is alleged."  *State ex rel. Gilbert v. City of Cincinnati*, 125 Ohio St.3d 385, 2010-Ohio-1473, 928 N.E.2d 706, ¶ 14, quoting *State ex rel. Shemo v. Mayfield Hts.*, 95 Ohio St.3d 59, 63, 765 N.E.2d 345 (2002).

### A.  Statute of Limitations

{¶23}  The City first argues that the trial court erred in granting the writ, because Greenacres's temporary-regulatory-taking claim was time barred.

{¶24}  Takings claims are governed by the four year statute of limitations in R.C. 2305.09(E).  *See State ex rel. Doner v. Zody*, 130 Ohio St.3d 446, 2011-Ohio-6117, 958 N.E.2d 1235, ¶ 33-35.  R.C. 2305.09(E) provides that an action "[f]or relief

on the grounds of a physical or regulatory taking" shall be brought "within four years after the cause of action thereof accrued." The Ohio Supreme Court has held that "a cause of action against the government has first accrued only when all the events which fix the government's alleged liability have occurred and the plaintiff was or should have been aware of their existence." *See Doner* at ¶ 34, quoting *Hopland Band of Pomo Indians v. United States* 855 F.3d 1573, 1577 (D.C.Cir. 1988). The Ohio Supreme Court has recognized that the statute of limitations for a taking may be tolled when the government's ongoing control causes continuing damage to another's property. *Doner* at ¶ 37-45.

{¶25} Here, the trial court held that the "City's control over the evolving status of the Gamble House Property as 'historic' resulting initially in the City's appeal of its indecision over the issuance of the demolition permit followed by the illegal retrospective historic zoning designation and later the City ordinance necessitating numerous administrative appeals," tolled the statute of limitations until the ordinance was repealed on September 6, 2013. The trial court concluded that because Greenacres had filed this action on May 23, 2014, it was not barred by the statute of limitations.

{¶26} The City argues that the action that gave rise to Greenacres's temporary-regulatory-taking claim arose on February 22, 2010, when the City failed to issue a demolition permit despite its initial approval following a predemolition inspection of the property. The City argues that Greenacres recognized that this was the accrual of any potential wrongdoing by the City when it filed its mandamus complaint on February 24, 2010. It further argues that Greenacres had notice, yet again, of the alleged deprivation when city council enacted Ordinance No. 155-2010

on May 12, 2010, designating the Gamble House as historical. As a result, it argues that Greenacres's regulatory-taking claim had accrued on February 22, 2010, and no later than May 12, 2010, upon the adoption of the ordinance. It additionally argues that the trial court erred in applying the continuing-violation theory to the regulatory taking because the Supreme Court has applied that theory to only one physical taking-case, and Ohio appellate courts have generally rejected its application to regulatory-takings claims. *See State ex rel. Nickoli v. Erie Metroparks, Inc.*, 124 Ohio St.3d 449, 2010-Ohio-606, 923 N.E.2d 588, ¶ 32-34; *Painesville Mini Storage v. City of Painesville*, 124 Ohio St.2d 504, 2010-Ohio-920, 924 N.E.2d 357, ¶ 3; *State ex rel. Dinardo v. Chester Twp.*, 11th Dist. No. 2012-G-3063, 2012-Ohio-5828, ¶ 10.

{¶27} While February 22, 2010, was the first date that Greenacres's application for a demolition permit was eligible to be granted, we do not agree that this is the date upon which all the events that fixed the City's alleged liability took place. As Greenacres points out, on February 22, 2010, Ghosh had referred its permit application to Harris, the City's urban conservator, because Harris had been given information that the Gamble House was a historic structure. The City then proceeded administratively to designate the Gamble House as a "Historic Landmark," followed by city's council's adoption of an ordinance approving the "Landmark Designation" on May 12, 2010. The City then shifted to requiring Greenacres to obtain a COA before applying for the demolition permit. Greenacres applied for the COA, which was denied by the Historic Conservation Board in December 2010 and by the ZBA in April 2011.

{¶28} Thus, we hold that the statute of limitations did not begin to run on Greenacres's claim until the city had denied the COA in April 2011. That was the

11

point at which Greenacres's demolition permit had been finally denied. Given that the four-year statute of limitations did not start running until that time, we cannot conclude that Greenacres's regulatory-taking claim was filed outside the four-year statute of limitations. As a result, we find the City's first argument without merit.

### B. Res Judicata

{¶29} The City next argues that Greenacres's mandamus claim is barred by res judicata. Res judicata operates to preclude a party in a previous lawsuit from relitigating a claim in a subsequent lawsuit. Under this doctrine, "a valid final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action." *Grava v. Parkman Twp.*, 73 Ohio St.3d 379, 653 N.E.2d 226 (1995), syllabus.

{¶30} The City first argues that Greenacres could have raised and litigated the regulatory-taking claim in its original mandamus action in 2010. The City points to the fact that Greenacres first argued that the City had engaged in a regulatory taking when it amended its complaint in the case numbered A-1001797 and requested that the court issue a writ of mandamus ordering the City to initiate appropriation proceedings. The City alternatively argues that Greenacres could have raised the regulatory-taking claim in any of its five separate administrative appeals. Instead, having received a final judgment in its favor by this court in 2013, it dismissed all the pending claims on the ground of mootness. Thus, the City asserts that res judicata now bars the mandamus claim raised in this case that was the subject of the initial 2010 common pleas court action.

{¶31} Greenacres's failure to raise the mandamus claim in the five administrative appeals is not res judicata. As we noted, the Ohio Supreme Court has

12

held that mandamus is the "appropriate action to compel public authorities to institute appropriation proceedings when an involuntary taking of private property is alleged." *State ex rel. Gilbert*, 125 Ohio St.3d 385, 2010-Ohio-1473, 928 N.E.2d 706, at ¶ 14, quoting *State ex rel. Shemo*, 95 Ohio St.3d at 63, 765 N.E.2d 345.

{¶32} Under R.C. 2731.02, only the Ohio Supreme Court, courts of appeal, or common pleas courts may issue writs of mandamus. Thus, Greenacres could not have brought a mandamus claim as an alternative claim to their permit application because the administrative agencies considering the permit applications lacked the authority to issue an extraordinary writ. They also could not have sought mandamus in the appeal of the denial of the permit, because that would have exceeded the scope of the trial court's review under R.C. 2506. *See State ex rel. Hensley v. Columbus,* 10th Dist. Franklin No. 10AP-840, 2011-Ohio-3311, ¶ 31; *see also State ex rel. Shelly Materials v. Clark Cty Bd. Of Commrs*, 2d Dist. No. 2003-CA-72, 2005-Ohio-6682, ¶ 8-9 (res judicata did not bar a party's claim for a writ of mandamus for an alleged taking where the party had previously appealed the denial of a demolition permit).

{¶33} The City next argues that Greenacres asserted a regulatory taking of its property in the initial lawsuit it filed in the common pleas court in 2010. But we have concluded that Greenacres's regulatory-taking claim did not accrue until April 5, 2011, when the city finally denied Greenacres's request for the demolition permit by denying its application for the COA. Greenacres, recognizing that the claim was premature, properly dismissed it without prejudice under Fed.R.Civ.P. 41(A)(1)(B). Because there was no judgment in the common pleas court upon which res judicata could be premised and Greenacres's takings claim had not yet accrued, the City's argument is without merit. *See Daudistel v. Silverton*, 1st Dist. Hamilton No. C-

13

130661, 2014-Ohio-5731, ¶ 21; *Dater v. Charles H. Dater Found.*, 1st Dist. Hamilton No. C-020675, 2003-Ohio-7148, ¶ 82-85.

### C. Merits of the Regulatory-Taking Claim

{¶34}  The trial court found that the City's actions in denying the demolition permit and retroactively imposing the historical zoning designation on the Gamble House constituted a regulatory taking of the Gamble House property without just compensation.  The City asserts that Greenacres's temporary regulatory-takings claim failed, because Greenacres could not establish by clear and convincing evidence that it had been denied all economically viable use of the property, and because the 36-month delay in the City's issuance of the demolition permit was insufficient to establish a temporary taking.

{¶35}  Two types of regulatory actions will be deemed to be per se takings for Fifth Amendment purposes.  One is a government action that causes an owner to suffer a permanent physical invasion of his property.  *See State ex rel. Shelly Materials, Inc.*, 115 Ohio St.3d 337, 2007-Ohio-5022, 875 N.E.2d 59, at ¶ 18, citing *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 435-440, 102 S.C.t. 3164, 73 L.Ed.2d 868 (1982).  The second is a categorical or total taking by a governmental regulation that completely deprives an owner of "all economically beneficial uses" of the property. *See Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1019, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992);  *Shelly Materials* at ¶ 18.

{¶36} In a *Lucas* total-taking case, "the government must pay just compensation for the total property taken except to the extent that 'background principles of nuisance and property law' independently restrict the owner's intended use of the property." *Shelly Materials* at ¶ 18, quoting *Lucas* at 1030. " 'Outside these

two relatively narrow categories (and the special contest of land-use exactions * * * ) regulatory takings challenges are governed by the standards set forth in *Penn Cent. Transp. Co. v. New York City*, 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978).' " *Shelly Materials* at ¶ 18, quoting *Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528, 538, 125 S.Ct. 2074, 161 L.Ed.2d 876 (2005).

{¶37} *Penn Central* recognizes an ad hoc, factual inquiry that requires the examination of the following factors to determine whether a regulatory taking occurred in a case in which there is no physical invasion and the regulation deprives the property of less than 100 percent of its economically viable use: (1) the economic impact of the regulation on the claimant; (2) the extent to which the regulation has interfered with distinct investment-backed expectations; and (3) the character of the governmental action. *Shelly Materials* at ¶ 19, citing *Penn Cent.* at 124.

{¶38} Here, Greenacres has argued that the City's action temporarily denied them all economically beneficial use of the Gamble House property—a *Lucas* type categorical taking. Thus, we need not determine whether there was a temporary, partial regulatory taking of the Gamble House under the *Penn Central* analysis. *See, e.g., State ex. rel. Duncan v. Village of Middlefield*, 120 Ohio St.3d 313, 2008-Ohio-6200, 898 N.E.2d 952.

{¶39} The City first argues that Greenacres has failed to demonstrate that it was denied all economically-viable use of the property. The City relies on *BSW Dev. Group v. City of Dayton*, 83 Ohio St.3d 338, 344, 699 N.E.2d 1271 (1998). In that case, the property owner had applied for a demolition permit, but the city of Dayton had refused to issue it because it considered the building to be historic. The property owner obtained a judgment holding that Dayton should have issued the demolition

15

permit. The property owner then sought compensation for the taking of its property during the time that the demolition permit had been improperly denied. The Ohio Supreme Court upheld the denial of the writ, holding that the property owner had failed to show that it had been denied all economically-viable use of the property, because it was still able to use the property for parking and storage.

{¶40} The City argues that Greenacres, like the property owner in *BSW*, cannot establish by clear and convincing evidence that it was denied all economically-viable use of the property, because it was permitted to keep using the property in the same manner as it had before the City had issued the permit, and because the City's appraiser had opined that the property was more valuable with the Gamble House remaining on it than with the home demolished.

{¶41} The record, however, reflects that the Gamble House, had been uninhabited since 1961, had suffered extensive water and termite damage, and was infested by mice, birds, raccoons, squirrels, and bats. During the course of the administrative proceedings, the City had ordered Greenacres' to bring the property up to minimum safety standards. Thus, unlike the *BSW* building, which could be put to some use, the Gamble House was uninhabitable and could not be put to any economically-viable use without Greenacres spending significant sums of money.

{¶42} The City's position that the property still had value was based solely upon the opinion of its hired appraiser and was devoid of any consideration of the cost to repair the building. Cost estimates obtained by Carter Randolph, Greenacres' president, and its expert, Eric Gardner, showed that the cost of returning the home to a usable state would vastly exceed the value of the home. Cost estimates to rehab the property were between one and two million dollars. If Greenacres were to use

the property as a museum, as advocated by opponents of the permit, then it would need an additional six to eight million dollars to fund maintenance on the property. Had the City's denial of the permit not been reversed by *Greenacres I*, Greenacres would have never been able to make any economically-viable use of their property unless the law changed.

{¶43} Lastly, the City argues that when a property owner's application for a demolition permit is delayed for 36 months, there is no unconstitutional taking as a matter of law under *Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency*, 535 U.S. 302, 122 S.Ct. 1465, 152 L.Ed.2d 517. In *Tahoe-Sierra*, the United States Supreme Court held that moratoriums, totaling 32 months, on development in the Lake Tahoe Basin did not constitute a compensable taking, although the moratoriums temporarily deprived affected landowners of all economically-viable use of their property. The City argues that because the Ohio Supreme Court, in *State ex rel. Shemo*, 96 Ohio St.3d 379, 2002-Ohio-4905, 775 N.E.2d 493, at ¶ 11, found that a lengthier delay than that in *Tahoe-Sierra* could constitute a taking, the shorter time frame in this case cannot constitute a taking. But the Ohio Supreme Court's statement as to the time of the delay in *Shemo* was but one factor the court cited as to why it did not determine *Tahoe-Sierra* to be dispositive of the taking before it. As a result, we find the City's argument meritless.

{¶44} But because of our resolution of the statute of limitations issue, the trial court erred in determining the temporary regulatory taking took place prior to April 11, 2011. As a result, we limit the taking from April 11, 2011 to September 6, 2013. We, therefore, sustain in part and overrule in part the City's first assignment of error.

17

### D. Trial Court's Procedure on the Writ

{¶45} In its second assignment of error, the City argues that the trial court erred in entering findings of fact and conclusions of law without conducting an evidentiary hearing or permitting the City to conduct discovery prior to the hearing.

{¶46} The record reflects that the City and Greenacres agreed to the procedure the trial court employed in this case. They stipulated to an extensive record containing all the prior proceedings, testimony, and ordinances, and they agreed to submit both motions to the trial court for its determination following oral argument on the stipulated record. The scheduled hearing date was twice amended without the City asserting that it needed to conduct discovery. Furthermore, nothing in the entries prohibited the parties from submitting affidavits. Thus, the record indicates that it was the parties' and the court's intention to submit the matter as a trial on the briefs and the stipulated record.

{¶47} Greenacres filed the affidavits of Carter Randolph and Eric Gardner on the Friday before the hearing. The City was permitted to file affidavits and did submit two affidavits the same day that it filed its proposed findings of fact and conclusions of law, giving Greenacres no opportunity to address the City's new testimony or to conduct discovery. Thus, the City can demonstrate no prejudice from the procedure. Moreover, error, if any, in the admission of Randolph's and Gardner's affidavits was invited and/or harmless, as the City had previously agreed to the procedure and the affidavits were duplicative of Randolph's and Gardner's testimony in the stipulated record. *See Blair v. McDonaugh*, 177 Ohio App.3d 262, 2008-Ohio-3698, 894 N.E.2d 377, ¶ 39 (1st Dist.). As a result, we overrule the City's second assignment of error. We affirm the judgment of the trial court as modified.

18

Judgment accordingly.

**STAUTBERG, J,** concurs.
**DEWINE, J.,** dissents.

**DEWINE, J.,** dissenting.

{¶48} I dissent. Greenacres' mandamus action was filed more than four years after the accrual date of its cause of action, so the court should have dismissed the complaint.

{¶49} "[A] cause of action against the government has first accrued only when all the events which fix the government's alleged liability have occurred and the plaintiff was or should have been aware of their existence." *State ex rel. Nickoli v. Erie Metroparks, Inc.*, 124 Ohio St.3d 449, 2010-Ohio-606, 923 N.E.2d 588, ¶ 34, citing *Hopland Band of Pomo Indians v. United States*, 855 F.2d 1573, 1577 (Fed.Cir.1988). In its complaint, Greenacres alleged that the city's taking began on February 22, 2010—the date that the city refused to issue the demolition permit.

{¶50} Greenacres contends that, although the taking occurred on February 22, 2010, the statute of limitations was tolled under a theory of continuing violation. As pointed out by the majority, the continuing-violation theory has been rejected for regulatory takings such as this one. *See Nickoli*, at ¶ 31-37; *State ex rel. Dinardo v. Chester Twp.*, 11th Dist. Geauga No. 2012-G-3063, 2012-Ohio-5828, ¶ 11. That conclusion should end the inquiry. Without the tolling of the statute of limitations, Greenacres's cause of action accrued on February 22, 2010, the date on which the city refused to issue the demolition permit—more than four years before it filed its complaint.

{¶51} The majority, however, chooses a different date for the taking. After considering a record replete with different dates of actions by both sides, the majority decides that April 11, 2011[1]—the date that the Zoning Board of Appeals affirmed the Historic Conservation Board's denial of Greenacres's Certificate of Appropriateness—is the day that the taking took place. Thus, the majority concludes, given an April 11, 2011 accrual date, Greenacres' complaint was filed within the statutory limits. *See* R.C. 2503.09(E). The problem with the approach is that the date chosen conflicts with the court's conclusion that the taking happened on February 22, 2010.

{¶52} To prove a taking, Greenacres needed to show that the city's denial of the demolition permit "infringed upon [Greenacres'] rights to the point that there is no economically viable use of the land and, consequently, a taking has occurred for which [it] is entitled to compensation." *Goldberg Companies, Inc. v. Richmond Hts. City Council*, 81 Ohio St.3d 207, 210, 690 N.E.2d 510 (1998). Greenacres submitted the affidavit of its expert Eric Gardner, who opined that "from February 18, 2010 until August 7, 2013, the City of Cincinnati's refusal to issue a demolition permit and recognize the existing single family residential zoning as to [the Gamble House] completely deprived Greenacres Foundation as the owner of all economically beneficial use." The city answered with an affidavit from its expert, Nicholas Dietrich, who concluded that the Gamble House "contribute[d] a value over and above the site value without the residence present" and that "the highest and best use of the subject is as improved as of the effective date of the appraisal, not as vacant land." Faced with these two opinions, the trial court determined that "Greenacres was denied all economically

---

[1] The exact date of the ZBA's action is a moving target: The majority picks the date of April 11, 2011. The trial court noted the date was April 5, 2011. And the ZBA written decision indicates that it was released April 7, 2011.

20

viable use of the Gamble House Property between February 22, 2010 and September 6, 2013.”

{¶53} Greenacres consistently maintained in the trial court that the taking occurred—that is, that it was denied all economically viable use of its land—on February 22. The trial court, after hearing the evidence, adopted February 22 as the date of the taking. The record supports this conclusion. There is nothing that would support a finding that the deprivation of economically viable use began only upon the ZBA's affirmance of the denial of the Certificate of Appropriateness.

{¶54} The taking occurred on February 22, 2010. It was on that day that “all the events which fix the [city's] alleged liability * * * occurred” and Greenacres' cause of action accrued. Because Greenacres filed its complaint more than four years after the accrual date, it was barred by the statute of limitations. Because the majority sees it differently, I dissent.

Please note:

The court has recorded its own entry on the date of the release of this opinion.